UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

BUDINGER WINDMILL TRUST,                    Case No.: 6:13-bk-09907-KSJ
                                                          Chapter 11

       Debtor

_____/

## DEBTOR'S PLAN OF REORGANIZATION, DATED 10/16/2013

ARTICLE I
SUMMARY

      This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Budinger Windmill Trust (the "Debtor").

      This Plan provides for nine (9) classes of secured claims; one (1) class of unsecured claims; and one (1) class of equity security holders.  This Plan also provides for the payment of administrative and priority claims to the extent permitted by the Code or the claimant's agreement.

      All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders is being served contemporaneously with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

Class 1.    The claim of Wells Fargo, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in Windmill Point

Class 2.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 1401 Budinger

Class 3.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in  1525 Budinger

Class 4.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2468 Smith Street

Class 5.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in that portion of 1401 Budinger having parcel identification number ending in 10010 for 2013 real estate taxes

Class 6.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in that portion of 1401 Budinger having parcel identification number ending in 10020 for 2013 real estate taxes

Class 7.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 1525 Budinger for 2013 real estate taxes

Class 8.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2468 Smith Street for 2013 real estate taxes

Class 9.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2425 Pleasant Hill Road for 2013 real estate taxes

Class 10.    All unsecured claims allowed under § 502 of the Code

Class 11.    Equity interests of the Debtor

ARTICLE III
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
U.S TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified claims.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the Effective Date,  in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will receive on account of such claim regular monthly payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period commencing thirty (30) days after the Effective Date and ending not later than 5 years after the date of the order for relief.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U. S. C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

ARTICLE IV
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class1 – Secured Claim of Wells Fargo | Yes | *Lien*:  The holder of the Class 1 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 2 – Secured Claim of PNC as to 1401 Budinger | Yes | *Lien*:  The holder of the Class 2 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 3 – Secured Claim of PNC as to 1525 Budinger | Yes | *Lien*:  The holder of the Class 3 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 4 – Secured Claim of PNC as to 2468 Smith Street | Yes | *Lien*: The holder of the Class 4 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*: The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII). As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*: the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order.<br><br>*Payments End*: all unpaid amounts shall be due and payable (balloon) five (5) years after the payments begin. |
| Class 5 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on that portion of 1401 Budinger having parcel identification number ending in 10010 | Yes | *Lien*: The holder of the Class 5 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay*: The holder of the Class 5 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest*: The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII). As of the date of this Plan, the Till Rate is 5%.<br><br>Payments: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date of the plan and August 1, 2018 at the Till Rate.<br><br>*Payments Begin*: the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 6 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on that portion of 1401 Budinger having parcel identification number ending in 10020 | Yes | *Lien:*  The holder of the Class 6 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 6 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date of the plan and August 1, 2018 at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 7 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on 1525 Budinger | Yes | *Lien:*  The holder of the Class 7 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 7 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 8 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on 2468 Smith Street | Yes | *Lien:*  The holder of the Class 8 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 8 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 9 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on Windmill Point | Yes | *Lien:*  The holder of the Class 9 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 9 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 10 - Allowed Unsecured Creditors | Yes | $5,000.00 will be paid to holders of Allowed Unsecured Claims on a pro rata basis. |
| Class 11 - Equity Security Holders of the Debtor | Yes | Interests will be canceled |

ARTICLE V
ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04    Minimum Distribution Amount.  Notwithstanding any other provision of this Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest.

8

ARTICLE VI
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the  Effective Date:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
| --- | --- |
| MBT Homes<br>117B Broadway<br>Kissimmee, FL 34741 | Leasing and property maintenance 4% of gross rent collected, paid annually |
| Stadium Place Administration<br>117 Broadway, Suite B<br>Kissimmee, FL 34741 | Property management and financial accounting 4% of gross rent collected, paid annually |
|  | All liability, property and casualty insurance policies in effect that have not expired as of the Effective Date |
| Various – See Exhibit "1" | Leases of non-residential real property, where the Debtor is the Landlord |

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

ARTICLE VII
MEANS FOR IMPLEMENTATION OF THE PLAN

This Plan will be implemented as follows:

7.01    Funding and Implementation of the Plan.  The distributions required under this Plan will be funded from the following sources:

a.    cash on hand and on deposit;

b.    revenues from future operations of the Debtor's business;

      c.     capital raised from the issuance of membership interests in the Reorganized Debtor.   The transaction relating to the issuance of membership interests will be closed under the Funding Agreement attached as Exhibit "2"; and

      d.     the contribution of $10,000.00 which will be made by Randy Sheive (the "Randy Sheive Contribution") pursuant to the provisions of section 9.02 below.

    7.02   <u>Conversion of Debtor to a Florida Limited Liability Company</u>.  Pursuant to Fla. Stat. §608.439(1), the Debtor shall convert from a land trust organized under Fla. Stat. §689.071 to a Florida Limited Liability Company organized under Fla. Stat. Chapter 608 and will use the name "Budinger Windmill Trust, LLC."

    7.03   <u>Amendment to Articles of Organization and Operating Agreement.</u>  The Articles of Organization and the Operating Agreement of the Debtor shall contain provisions consistent with the Plan and Bankruptcy Code.

    7.04   <u>Manager</u>.  The manager of the Debtor shall be Budinger Windmill, LLC, which shall not receive any compensation for its service as manager.

    7.05   <u>Retention and Re-Titling of Assets</u>.  The Debtor shall retain all assets of the estate.  Any titled assets, such as real property, shall be transferred or re-titled from the Debtor, as land trust to the reorganized Debtor: Budinger Windmill Trust, LLC.  The transfers will be made no later than thirty (30) days after the Effective Date and the transfers shall be exempt from documentary stamp taxes pursuant to 11 U. S. C. §1146.

ARTICLE VIII
<u>GENERAL PROVISIONS</u>

    8.01   <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

    (a)    **Pro Rata Share** shall mean with respect to any Distribution, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

    (b)    **Till Rate** means the "U. S. Prime Rate" denoted as such and published in The Wall Street Journal under "Money Rates" plus 1.75%.   As of the date of this Plan, the U. S. Prime Rate is 3.25% and the Till Rate is 5%.

(c)    **1401 Budinger** means the real property owned by the Debtor which has the legal description listed in Exhibit "3"

(d)    **1525 Budinger** means the real property owned by the Debtor which has the legal description listed on Exhibit "4

(e)    **2468 Smith Street** means the real property owned by the Debtor which has the legal description listed on exhibit "5"

(f)    **Windmill Point** means the real property owned by the Debtor which has the legal description listed on exhibit "6"

8.02    <u>Effective Date of Plan</u>.    **Effective Date** means the first business day following the date that is twenty eight (28) days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03    <u>Severability</u>.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.


ARTICLE IX
<u>DISCHARGE, INJUNCTION AND THIRD PARTY RELEASES</u>

9.01    <u>Discharge of Claims Against the Debtor</u>.  On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt imposed by this Plan.

9.02    <u>Release/Injunction</u>.  The Plan is premised upon the following described release and injunction:

a.    **Party to be released**: *Randy Sheive;*

**b.      Entities Subject to the Injunction and Release:**   *the      Debtor, Parties in Interest, Unsecured Creditors, and Interest Holders;*

**c.      Claims Released and Acts Enjoined:**   *Randy Sheive shall be released from all claims related to the Debtor that arose prior to the Effective Date, including, but not limited to any and all claims arising from any mortgage deficiencies. Further, the Debtor, Parties in Interest, Unsecured Creditors, and Interest Holders shall be permanently enjoined from asserting, prosecuting or collecting any of the released claims from Randy Sheive.  Provided, however, that such injunction shall not apply to any claim asserted against the Reorganized Debtor by a claimant based upon a default by the Reorganized Debtor in performance of its obligations to the claimant under the Plan and operative documents between the Reorganized Debtor and the claimant.*

Respectfully submitted.

Budinger Windmill Trust

by: Budinger Windmill, LLC as Trustee

by: _____
Randy Sheive, Manager

/s/ Kenneth D. Herron, Jr.
Kenneth D. (Chip) Herron, Jr.
Florida Bar No. 699403
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Dr.
Orlando, FL 32804
Telephone: (407) 648-0058
Fax: (407) 648-0681
Email: kherron@whmh.com

Attorneys for Budinger Windmill Trust

# Exhibit 1

| Property Address | Primary Tenant | Monthly Rent Amount | Lease Start Date | Lease End Date |
|---|---|---|---|---|
| 2425-2427 Pleasant Hill Rd | Jacquiline Matos | $ 2,050.00 | 09/01/08 | MM |
| 2429 Pleasant Hill Rd | Maldonado, Nayra | $ 1,946.88 | 12/01/11 | 11/30/13 |
| 2431 Pleasant Hill Rd | UZ Mobile Inc | $ 2,429.91 | 09/01/10 | MM |
| 2433 Pleasant Hill Rd | Poinciana Supermarket Inc | $11,766.65 | 09/15/09 | 09/30/14 |
| 2435 Pleasant Hill Rd | MJ&T of Kissimmee, LLC | $ 1,856.25 | 08/01/09 | MM |
| 2437 Pleasant Hill Rd | Torres, Julio | $ 1,800.00 | 07/01/13 | 06/30/15 |
| 2439 Pleasant Hill Rd | Esperanza Delacaridad Noboa | $ 1,100.00 | 12/01/10 | MM |
| 2441 Pleasant Hill Rd | John Anthony Natale | $ 832.00 | 02/01/13 | 01/31/15 |
| | | $23,781.69 | | |
| | | | | |
| 1401 Budinger Bldg - Suite A | Stewart Approved Title, Inc | $ 3,616.93 | 01/01/08 | MM |
| 1401 Budinger Bldg - Suite B | Goodwin Realty and Associates, Inc. | $ 2,184.00 | 03/01/12 | 02/28/14 |
| 1401 Budinger Bldg - Suite C | Gammons, Gary | $ 350.00 | 12/15/12 | 12/31/13 |
| 1401 Budinger Bldg - Suite D | | $ - | | |
| 1401 Budinger Bldg - Suite E | Draper, Charlie | $ 900.00 | 04/01/13 | 03/31/15 |
| 1401 Budinger Bldg - Suite F | Brown, Adams | $ 360.00 | 03/01/12 | MM |
| 1401 Budinger Bldg - Suite G | | $ - | | |
| 1401 Budinger Bldg - Suite H-I | | $ - | | |
| 1401 Budinger Bldg - Suite I | | $ - | | |
| 1401 Budinger Bldg - Suite J | | $ - | | |
| | | $ 7,410.93 | | |
| | | | | |
| Smith Street | Florida Armature Works, Inc. and German Garcia | $ 1,000.00 | 09/01/09 | MM |
| Smith Street | | $ - | | |
| | | | | |
| 1525 Budinger Building - 15 | St. Cloud Hospital | $ 3,173.33 | 06/01/11 | 05/31/14 |
| 1525 Budinger Building - 15 | Osceola Regional Hospital | $ 2,666.67 | 06/01/11 | 05/31/14 |
| 1525 Budinger Building - 15 | Orlando Regional Healthcare System | $ 4,000.00 | 06/01/11 | 05/31/14 |
| | | $ 9,840.00 | | |
| | | | | |
| | Totals | $ 41,032.62 | | |

# Exhibit 2

## <u>FUNDING AGREEMENT</u>

This Agreement is made and entered into as of October 9, 2013, by and between Budinger Windmill Trust (he "Debtor") and Randy Sheive and Rebecca A. Sheive, as tenants by the entireties ("Investor").  In consideration of the mutual promises contained herein, the parties agree as follows:

1.      <u>Plan of Reorganization</u>.    This Agreement is being entered into in connection with the Debtor's Plan of Reorganization dated October 9, 2013 ("Plan"), being proposed by the Debtor in a the Debtor's Chapter 11 reorganization case, *In re: Budinger Windmill Trust*,  Case No 6:13-bk-09907-KSJ, United States Bankruptcy Court, Middle District of Florida, Orlando Division.  The defined terms used in the Plan shall have the same definition when used in this Agreement unless otherwise defined in this Agreement.

2.      <u>Investment in Debtor</u>.  The Plan provides, in part, that:

a.      all equity interests in the Debtor are being cancelled as of the Effective Date;

b.      the Debtor will be converted from a land trust organized pursuant to Fla. Stat. §697.01 to a Limited Liability Company organized under Fla. Stat. Chapter 608, which will be named Budinger Windmill Trust, LLC (the "LLC"); and

c.      the LLC will raise capital for its business operations through the issuance of membership interests in the LLC.  The funds raised from the issuance of membership interests will be used, in part, to fund obligations of the Debtor under the Plan.

# Exhibit 2

3.      <u>Purchase of Membership Interest.</u>   Investor   shall   make   capital contributions to the LLC in the amount $10,000.00 (the "Capital Contribution").

4.      <u>Conditions Precedent</u>. The Investor's obligations under this Agreement are subject to the following conditions, to be satisfied prior to or on the Effective Date:

a.      The Debtor's business will continue to be conducted and managed by the Debtor as Debtor-in-Possession, in the ordinary course;

b.      The Debtor will not dispose of substantial assets out of the ordinary course of business without the prior consent of the Investor;

c.      The Plan shall not have been amended or modified without the prior consent of the Investor;

d.      There shall be no material adverse change in the assets, business, or financial condition of the Debtor between the date of this Agreement and the Effective Date;

e.      The total amount of the Allowed Secured Claims of PNC Bank, National Association shall not exceed $1,333,000; and

f.      The total amount of the Allowed Secured Claim of Wells Fargo Bank, N. A. shall not exceed $1,900,000.00.

If any of these conditions have not been

5.      <u>Membership Interests</u>.   Membership interests in Debtor shall be issued to the Investor on the Effective Date, such that Investors shall hold 100% of the issued and outstanding Interests in the LLC.

# Exhibit 2

6.      Deposit.  As a condition of the obligations of the Debtor hereunder, no later than November 1, 2013, Investor shall deposit the sum of $10,000.00 in escrow with the Debtor's attorney, Kenneth D. Herron, Jr., Wolff, Hill, McFarlin & Herron, P. A. 1851 W. Colonial Drive, Orlando, Florida 32804 ("Deposit").

7.      Failure of Conditions Precedent.  The Deposit shall be returned to the Investor, without interest, if:

a.      a condition precedent is not satisfied and Investor makes written demand for return of the Deposit;

b.      the Agreement is terminated by the Debtor as a result of a higher offer as provided herein; or

c.      confirmation of the Plan is denied.

8.      Higher Offer.  If the Debtor receives a higher offer that meets the following conditions (a "Qualified Offer"), then this Agreement shall be terminated and the Debtor shall sell the membership interests in the LLC pursuant to the provisions of paragraph 9 below:

a.      the offer must be received by the Debtor or the attorney for the Debtor no  later than 14 days after the entry of the Order scheduling the hearing to consider confirmation of the Plan (the "Confirmation Hearing");

b.      the offer complies with the terms of this Agreement;

c.      the offer is in an amount not less than $12,500.00;

d.      the offer must be accompanied by a deposit in the form of a cashier's check in the amount of $12,500.00 payable to Wolff Hill McFarlin & Herron,

# Exhibit 2

P.A. Trust Account; and

      e.     the offer must contain an acknowledgement that the party making the offer does not require any further due diligence and has relied solely upon its own independent review in making its offer.

      9.     <u>Auction of Membership Interests.</u>  If the Debtor receives a Qualified Offer, then the Debtor shall sell its membership interests in an auction on the following terms and conditions:

      a.     Time and Place of Auction.  The auction shall be conducted at 2:00 P. M. (EST) on the day that is one week prior to the Confirmation Hearing at the Debtor's attorney's office, Wolff, Hill, McFarlin & Herron, P. A. , 1851 W. Colonial Dr., Orlando, Florida 32804.  The Debtor's attorney will provide notice to Qualified Bidders of the auction date and time;

      b.     Only Qualified Bidders will be permitted to participate in the auction, but may do so in person or via telephone; Qualified Bidder.  The following persons shall be deemed "Qualified Bidders":  Investor and any and all persons submitting Qualified Bids;

      c.     Qualified Bidders shall be bound by the terms of this Agreement and shall have all rights and obligations of the Investor under this Agreement;

      d.     The opening bid shall be the highest Qualified Bid made by a Qualified Bidder prior to the auction;

      e.     Bids after the opening bid must be in minimum increments of $2,500.00;

# Exhibit 2

f.      After 5 minutes have passed without another bid being made, the last bid shall be the successful bid and the bidder shall be the successful bidder ("Successful Bidder");

g.      The Deposit paid by the Successful Bidder will immediately become nonrefundable.

h.      If for any reason the Successful Bidder fails to close the transaction on the Effective Date, then the Debtor shall be authorized without further notice, hearing or order, to close the sale with the bidder that submitted the second highest bid (the "Next Highest Bidder");

i.      Deposits paid by all bidders other than the Successful Bidder and the Next Highest Bidder shall be returned to such bidders not later than 3 days following the auction;

j.      Upon closing with the Successful Bidder, the Deposit paid by the Next Highest Bidder will be refunded to it.  If the Successful Bidder fails to close, the Deposit paid by it will be forfeited to the Debtor.  The Deposit paid by the Next Highest Bidder will then be applied to the purchase price at closing.  If the Next Highest Bidder then fails to close, the Deposit paid by it will be forfeited to the Debtor and the Debtor may attempt to sell the membership interests in any manner it deems reasonable; and

k.      No bidder will be entitled to any interest as a result of paying the Deposit.

## Exhibit 2

    10.   <u>Taxes</u>. Investor shall pay all transfer, stamp or intangible taxes relating to, occurring out of, or in connection with this transaction, if any.

    AGREED to as of the date first set forth above.

Debtor:                        Investor:

Budinger Windmill Trust

    by: Budinger Windmill, LLC, as Trustee

by: _____    _____
    Randy Sheive, Manager           Randy L. Sheive

                                    _____
                                    Rebecca A. Sheive

# Exhibit 3

**1401 BUDINGER**:

**Legal Description**:

> UNIT 1, 1401 BUDINGER OFFICE CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM SET FORTH IN O. R. BOOK 927, PAGE 336, AND AS SHOWN IN CONDOMINIUM EXHIBIT BOOK 2, PAGE 135, PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH THE UNDIVIDED INTEREST IN THE COMMON ELEMENTS ATTACHING THERETO ACCORDING TO THE AFOREMENTIONED DECLARATION.

> UNIT 2, 1401 BUDINGER OFFICE CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 927, PAGE 336, AND AS SHOWN IN CONDOMINIUM EXHIBIT BOOK 2, PAGE 135, PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH THE COMMON ELEMENTS ATTACHING THERETO.

**Street Address:** 1401 Budinger, Ave.

**Parcel ID:** PARCEL ID: 10-26-30-0026-0001-0010
PARCEL ID: 10-26-30-0026-0001-0020

# Exhibit 4

**1525 BUDINGER:**

**Legal Description:**

> LOTS 13 THROUGH 24 BLOCK 319, TOWN OF ST CLOUD ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK B PAGE 33 AND 34 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA.

**Street Address:** 1525 Budinger Ave.

**Parcel ID:** 01-26-30-0001-0319-0130

# Exhibit 5

**2468 SMITH**

**Legal Description:**

LOTS 6, 7 AND WEST ½ OF LOT 8, BLOCK 6, W.E. ALLEN SUBDIVISION, AND VACATED 15.0 FEET ALLY LYING SOUTH OF LOTS 6, 7 AND WEST ½ OF LOT 8, BLOCK 6, W.E. ALLEN SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN PLAT BOOK 1, PAGE 83 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH AND SUBJECT TO A NON-EXCLUSIVE EASEMENT OF INGRESS/EGRESS, PARKING, SEWER, WATER AND RETENTION ON THE SOUTH 17.0 FEET AND THE NORTH 65.0 FEET OF LOTS 6-10 OF BLOCK 6, WEST ALLEN SUBDIVISION, PLAT BOOK 1, PAGE 83 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA.

**Street Address: 2468 Smith Street**

**Parcel ID:** 15-25-29-2530-6-0060

# Exhibit 6

**Windmill Point:**

**Legal Description:**

Tracts A and B (Commercial Tracts) WINDMILL POINT UNIT 1, according to the Plat thereof, as recorded in Plat Book 7, Pages 124 through 127, Public Records of Osceola County, Florida.

Street Address: 2425 Pleasant Hill Road

**Parcel ID:** 17-26-29-5550-001-00A0
17-26-29-5550-001-00B0