UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

BUDINGER WINDMILL TRUST,                    Case No.: 6:13-bk-09907-KSJ
                                                              Chapter 11

       Debtor
_____/


**<u>DEBTOR'S DISCLOSURE STATEMENT</u>**


COUNSEL FOR DEBTOR

KENNETH D. HERRON, JR.
FLA. BAR NO. 699403
WOLFF, HILL, McFARLIN & HERRON, P.A.
1851 WEST COLONIAL DRIVE
ORLANDO, FLORIDA 32804

## **Table of Contents**

**INTRODUCTION**..................................................................................1

**Purpose of This Document** .............................................................1

**Deadlines for Voting and Objecting; Date of Plan
Confirmation Hearing** ....................................................................2

    *Time and Place of the Hearing to Finally Approve This
    Disclosure Statement and Confirm the Plan*...........................................2

    *Deadline for Voting to Accept or Reject the Plan*................................2

    *Deadline for Objecting to the Adequacy of Disclosure
    And Confirmation of the Plan* ..................................................2

    *Identity of Person to Contact for More Information*............................2

**Disclaimer** ....................................................................................3

**BACKGROUND** ...................................................................................3

**Description and History of the Debtor's Business** ........................3

**Insiders of the Debtor** ..................................................................3

**Management of the Debtor Before and During Bankruptcy** ......................4

**Events Leading to Chapter 11 Filing** ............................................4

**Significant Events During the Bankruptcy Case** ...........................4

**Projected Recovery of Avoidable Transfers**.................................5

**Claims Objections** .........................................................................5

**Current and Historical Financial Conditions**...............................5

**SUMMARY OF THE PLAN OF REORGANIZATION AND
TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...................................5

**What is the Purpose of the Plan of Reorganization** ........................................5

**Unclassified Claims** .........................................................................................5

    *Administrative Expenses* .........................................................................6

    *Priority Tax Claims*...................................................................................6

**Classes of Claims and Equity Interests** .........................................................7

    *Classes of Secured Claims* .......................................................................7

    *Classes of Priority Unsecured Claims* .................................................12

    *Classes of General Unsecured Claims* .................................................12

    *Class of Equity Interest Holders* ..........................................................12

**Means of Implementing the Plan** ...................................................................13

    *Sources of Payments* ..............................................................................13

    *Post-Confirmation Management*............................................................13

**Risk Factors** ....................................................................................................13

**Executory Contract and Unexpired Leases** .................................................14

**Tax Consequences of Plan** ...........................................................................14

**CONFIRMATION REQUIREMENTS AND PROCEDURES**............................14

**Who May Vote or Object** ...............................................................................15

    *What is an Allowed Claim or an Allowed Equity Interest* ...................15

    *What is an Impaired Claim or Impaired Equity Interest* .....................15

    *Who is **Not** Entitled to Vote* .................................................................16

    *Who Can Vote in More Than One Class*...............................................16

**Votes Necessary to Confirm the Plan**............................................................16

    *Votes Necessary for a Class to Accept the Plan* .................................16

    *Treatment of Nonaccepting Classes*......................................................17

**Liquidation Analysis**.....................................................................................17

**Feasibility** .......................................................................................................17

    *Ability to Initially Fund Plan* ...............................................................17

    *Ability to Make Future Plan Payments and Operate*
    *Without Further Reorganization*............................................................17

**EFFECT OF CONFIRMATION OF PLAN** ............................................................18

**Discharge of Debtor** .......................................................................................18

**Modification of Plan** ......................................................................................18

**Final Decree** ...................................................................................................18

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Budinger Windmill Trust (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on October 17, 2013.  A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one***.

### A.    **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.*e., what you will receive on your claim or equity interest if the plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;

- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

At a hearing on October 16, 2013, the Court announced that it will enter an Order, which will conditionally approve this Disclosure Statement and schedule a hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan (the "Order Scheduling Confirmation").  The hearing will be held on **December 16, 2013 at 9:00 a.m.** in Courtroom A, Sixth Floor, 400 West Washington Street, Orlando, Florida 32801.  consider confirmation of the Plan.

2.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, you will be provided with a ballot to indicate whether you accept or reject the Plan. The ballot form will contain instructions about how and where the ballot is to be filed  Section IV.A. below contains a discussion of voting eligibility requirements.

The Order Scheduling Confirmation will also set the deadline for filing ballots. Failure to file your ballot by the deadline may result in your ballot not being counted.

3.    *Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

The Order Scheduling Confirmation will advise you of the deadline for filing objections to the adequacy of this Disclosure Statement or to confirmation of the Plan.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact counsel for the Debtor:

> **Kenneth D. (Chip) Herron, Jr.**
> Wolff, Hill, McFarlin & Herron, P.A.
> 1851 W. Colonial Drive
> Orlando, Florida 32804
> 407-648-0058
> 407-648-0681 (fax)
> Email:  kherron@whmh.com

2

C.       **Disclaimer**

**At a hearing on October 16, 2013, the Court announced that it will enter an Order conditionally approving this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court will conditionally approve this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.**

II.      **BACKGROUND**

A.       **Description and History of the Debtor's Business**

The Debtor is organized as a land trust under Florida Law and has operated its business since May, 1997.  The Debtor is in the business of acquiring, owning, and operating commercial real estate for profit.  The properties currently owned by the Debtor are located in Osceola County, Florida and consist of the following:

| Property Address | Property Type | Property / Building Size |
|---|---|---|
| 1401 Budinger, Saint Cloud, Florida | Professional Office | 7,500 sq. ft. |
| 1525 Budinger, Saint Cloud, Florida | Professional Office | 7,500 sq. ft. |
| 2468 Smith St., Kissimmee, Florida | Warehouse | 5,000 sq. ft. |
| 2425 – 2441 Pleasant Hill Road, Kissimmee, Florida | Strip Mall / Retail | 19,800 sq. ft. |

B.       **Insiders of the Debtor**

The Debtor's insiders, as that term is defined in §101(31) of the United States Bankruptcy Code (the "Code"), and the compensation paid to them during the two years prior to the date on which the bankruptcy petition was filed and the compensation paid to them during this case are as follows:

i.       Budinger Windmill, LLC is the Trustee of Budinger Windmill Trust.  Budinger Windmill, LLC did not receive any compensation from the Debtor prior to the case being filed and has not received any compensation during this case; and

ii.      Randy Sheive is the Manager of Budinger Windmill, LLC, is a Director of the Debtor and is a Beneficiary of Budinger Windmill Trust.  Mr. Sheive has not received any compensation for acting in his official capacity as manager or Director, however, he has received distributions from Budinger Windmill Trust. The Debtor is still compiling the information relating to the distributions and will supplement this disclosure statement to include that information

3

C.      **Management of the Debtor Before and During the Bankruptcy**

The Debtor has a Trustee and a Director that manage its business affairs.  The Trustee is Budinger Windmill, LLC.  The Director is Randy Sheive.  Neither the Trustee nor the Director receive any form of salary or other compensation for acting in their capacities as Trustee and Director and neither received any salary or other form of compensation during the 1 year period prior to filing for acting in their capacities as Trustee and Director.

D.      **Events Leading to Chapter 11 Filing**

The Debtor is obligated on loan agreements that are secured by mortgages on the properties listed above.  PNC Bank, National Association ("PNC") contends that it holds four loan agreements executed by the Debtor and that the obligations under the loan agreements are secured by mortgages on 1401 Budinger Ave., 1525 Budinger Ave. and 1486 Smith Street.

The Debtor attempted to negotiate extensions of the loans with PNC, but was unable to reach an agreement with PNC.  PNC filed suit against the Debtor in the United States District Court, Middle District of Florida, Orlando Division, Case No. 6:13-cv-662-Orl-37KRS alleging that the obligations under its loan agreements had matured.  In the lawsuit PNC was seeking, in part, to foreclose mortgages that it contends it holds on 1401 Budinger Ave., 1525 Budinger Ave. and 1486 Smith Street.

The Debtor filed this case so that it could retain its assets and restructure its loan obligations with PNC and its other creditors.

E.      **Significant Events During the Bankruptcy Case**

The following are the most significant motions filed and Orders entered during the Bankruptcy Case.

| Date | Document No. | Description |
|---|---|---|
| 8/8/2013 | 1 | Voluntary Petition |
| 9/13/2013 | 34 | Order Conditionally Granting Motion to Determine Adequate Assurance for Payment of Utility Services |
| 9/27/2013 | 39 | Interim Order Granting Motion to Use Cash Collateral |
| 10/9/2013 | 48 | Amended Objection to Debtors Motion to Utilize Cash Collateral |
| 10/9/2013 | 49 | Motion to Dismiss Case |
| 10/9/2013 | 50 | Motion for Determination that the Automatic Stay Does not Apply to PNC's Collateral of in the Alternative for Relief from Stay |

4

F.       **Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition transactions.  If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

G.       **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable Order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

H.       **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit B**. The values are as of the date the petition was filed in this case and were obtained from the sources listed in **Exhibit B**.

The Debtor's most recent financial statements issued before bankruptcy are set forth in **Exhibit C**.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in **Exhibit D**.

III.     **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.       **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.       **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.      *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | None known | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court | Estimated not to exceed $75,000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to Court Order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | None | Paid in full on the effective date of the Plan |
| Other administrative expenses | None | If any, paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | All amounts are paid current | Paid in full on the effective date of the Plan |
| **TOTAL** | $75,000.00 | |

2.      *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the Order of relief.

The following chart lists the Debtor's estimated §507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| The Debtor is not aware of any priority tax claims | N/A | N/A | N/A |

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

#### 1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. The monthly payments set forth below are based upon the Value of the Collateral listed in the Description column. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: **Wells Fargo Bank, N. A**.<br><br>Collateral description: 2425 – 2441 Pleasant Hill Road, Kissimmee, Florida.<br><br>Allowed Secured Amount: Not yet determined<br><br>Debtor estimates that claim is oversecured.<br><br>Priority of lien: Second<br><br>Principal owed: $1,787,128.62<br><br>Total claim (estimated): $1,800,000.00 | No | Yes | *Lien*: will retain the lien securing the claim to the extent of the allowed secured claim.<br><br>*Interest*: The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum.<br><br>*Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%.<br><br>Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim): $12,129.19<br><br>*Payments Begin*: the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | Secured claim of: **PNC Bank, National Association** <br><br> Collateral description: 1401 Budinger Ave., St. Cloud, Florida <br><br> Allowed Secured Amount: Not yet determined, <br><br> Debtor estimates as $435,000.00 <br><br> Priority of lien: Second <br><br> Principal owed: $531,067.12 <br><br> Total claim (estimated): $ 633,267.08 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim. <br><br> *Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum. <br><br> *Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%. <br><br> *Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim)*:  $2,931.22 <br><br> *Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| 3 | Secured claim of: **PNC Bank, National Association** <br><br> Collateral description: 1525 Budinger Ave., St. Cloud, Florida <br><br> Allowed Secured Amount: Not yet determined <br><br> Debtor estimates as $680,000.00 <br><br> Priority of lien: Second <br><br> Principal owed: $988,188.72 <br><br> Total claim (estimated): $ 1,177,325.25 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim. <br><br> *Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum. <br><br> *Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%. <br><br> *Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim)*:  $4,582.14 <br><br> *Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 4 | Secured claim of: **PNC Bank, National Association**<br><br>Collateral description: 2468 Smith Street Kissimmee, Florida<br><br>Allowed Secured Amount: Not yet determined Debtor estimates as $200,000.00<br><br>Priority of lien: Second<br><br>Principal owed: $313,019.14<br><br>Total claim (estimated): $374,078.58 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim.<br><br>*Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum.<br><br>*Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%.<br><br>Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim):  $1,347.69<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| 5 | Secured claim of: **Osceola County Tax Collector 2013 taxes**<br><br>Collateral description: 1401 Budinger Ave., St. Cloud, Florida the portion with a parcel ID ending in 10010<br><br>Allowed Secured Amount: Oversecured<br><br>Priority of lien: First<br><br>Principal owed: $4,099.37<br><br>Total claim (estimated): $4,099.37 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim.<br><br>*Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum.<br><br>*Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%.<br><br>*Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim)*:  $85.40<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 6 | Secured claim of: **Osceola County Tax Collector 2013 taxes** Collateral description: 1401 Budinger Ave., St. Cloud, Florida the portion with a parcel ID ending in 10020 Allowed Secured Amount: Oversecured Priority of lien: First Principal owed: $4,488.57 Total claim (estimated): $4,488.57 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim. *Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum. *Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%. *Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim)*:  $93.51 *Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| 7 | Secured claim of: **Osceola County Tax Collector 2013 taxes** Collateral description: 1525 Budinger Ave., St. Cloud, Florida Allowed Secured Amount: Oversecured Priority of lien: First Principal owed: $11,704.27 Total claim (estimated): $11,704.27 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim. *Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum. *Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%. *Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim)*:  $248.83 *Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

10

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 8 | Secured claim of:<br>**Osceola County Tax Collector 2013 taxes**<br><br>Collateral description:<br>2468 Smith Street Kissimmee, Florida<br><br>Allowed Secured Amount: Oversecured<br><br>Priority of lien: First<br><br>Principal owed: $3,825.16<br><br>Total claim (estimated): $3,825.16 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim.<br><br>*Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum.<br><br>*Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%.<br><br>*Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim):*  $79.69<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| 9 | Secured claim of:<br>**Osceola County Tax Collector 2013 taxes**<br><br>Collateral description:<br>2425 – 2441 Pleasant Hill Road, Kissimmee, Florida<br><br>Allowed Secured Amount: Oversecured<br><br>Priority of lien: First<br><br>Principal owed: $27,051.37<br><br>Total claim (estimated): $27,051.37 | No | Yes | *Lien*:  will retain the lien securing the claim to the extent of the allowed secured claim.<br><br>*Interest*:  The allowed secured claim shall accrue interest from the Effective Date at the Till Rate, defined in the Plan as 5% per anum.<br><br>*Payments*: equal monthly payments calculated by amortizing the allowed amount of the claim over a 20 year period at 5%.<br><br>*Payment Amount (Based on Debtor's Estimate of the amount of the allowed secured claim):*  $563.54<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6) and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impaired | Treatment |
|---------|-------------|----------|-----------|
| None | The Debtor is not aware of any claims under §§507(a)(1), (4), (5), (6) or (7) | N/A | N/A |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 5 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 10 | Allowed Unsecured Claims | Yes | $5,000.00 will be paid to holders of Allowed Unsecured Claims on a pro rata basis. |

4.    *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart sets forth the Plan's proposed treatment of the one class of equity interest holders:

| Class # | Description | Impaired | Treatment |
|---------|-------------|----------|-----------|
| 11 | Equity interest holders | Yes | Interests will be cancelled |

D.     **Means of Implementing the Plan**

*1.  Sources of Payments*

The distributions required under this Plan will be funded from the following sources:

a.     cash on hand and on deposit;

b.     revenues from future operations of the Debtor's business;

c.     capital raised from the issuance of membership interests in the Reorganized Debtor; and

d.     the contribution of $10,000.00 which will be made by Randy Sheive (the "Randy Sheive Contribution") pursuant to the provisions of section 9.02 of the Plan.

*2.  Post-Confirmation Management*

Pursuant to Fla. Stat. §608.439(1), the Debtor shall convert from a land trust organized under Fla. Stat. §689.071 to a Florida Limited Liability Company organized under Fla. Stat. Chapter 608 and will use the name "Budinger Windmill Trust, LLC."

As an LLC the Reorganized Debtor will be managed by a manager whose name and compensation are as follows:

| Name | Insider (yes or no)? | Position | Compensation |
|------|----------------------|----------|--------------|
| Budinger Windmill, LLC | Yes | Manager | None |

E.     **Risk Factors**

The proposed Plan has the following risks, among others:

• The financial data has not been subject to audit; and

• Payments under the Plan are to be made in the future.  The amount of the payments and the Debtor's ability to make the payments are based upon projections and assumptions.  It is impossible, to make assumptions, estimates, and projections involving future economic conditions with complete accuracy.

13

F.    **Executory Contract and Unexpired Leases**

Section 6.01 of the Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executor contact, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in section 6.01 of the Plan, if any, will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is thirty (30) days after the date of the Order confirming this Plan*.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.    **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors*.

The following are the anticipated tax consequences of the Plan:  (1) Tax consequences to the Debtor of the Plan:  the Debtor will not suffer any tax liability as a result of debt being discharged under the Plan.  However, to the extent the Debtor possesses tax attributes, the Debtor will forfeit such attributes to the extent debt is discharged under the Plan.  (2) General tax consequences to creditors of any discharge: to the extent Creditors receive distributions totaling less than the amount of their claims (the balance being discharged under the Plan), creditors may be able to take advantage of deductions from gross income for bad debts.  (3) The general tax consequences of receipt of plan consideration after confirmation:  Creditors will likely be required to include all distributions in gross income.

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code.  These include the requirements that: the Plan must be proposed in good

faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in §1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Classes 1 through 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1.    *What is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case is December 9, 2013, except that the deadline for governmental creditors is February 4, 2014.***

2.    *What is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an Order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section B.2.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

16

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cramdown" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit E**.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that case are attached to this disclosure statement as **Exhibit F**.

2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit G**.

***You should Consult with Your Accountant or other Financial Advisor If you Have Any Questions Pertaining to These Projections***

V.      **EFFECT OF CONFIRMATION OF PLAN**

A.      **Discharge of Debtor**

Discharge.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

B.      **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modification after notice and hearing."

C.      **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the

Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

Respectfully Submitted,

_/s/Kenneth D. Herron, Jr._
Kenneth D. Herron, Jr., Esq.
Florida Bar No. 699403
Wolff, Hill, McFarlin & Herron, P.A.
1851 West Colonial Drive
Orlando, Florida 32804
Telephone: (407) 648-0058
Facsimile: (407) 648-0681
kherron@whmh.com

Attorneys for Debtor/Plan Proponent

**EXHIBITS**

**Exhibit A –**    Copy of the Plan

**Exhibit B** –    The identity and fair market value of the estate's assets

**Exhibit C** –    The Debtor's most recent financial statements issued before bankruptcy

**Exhibit D** –    Most Recently Filed Post-petition Operating Report

**Exhibit E** –    Liquidation Analysis

**Exhibit F -**    Tables showing the amount of cash on hand on the effective date of the Plan

**Exhibit G -**    Projections of income and expenses

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

BUDINGER WINDMILL TRUST,                    Case No.: 6:13-bk-09907-KSJ
                                                          Chapter 11

       Debtor

_____/

## DEBTOR'S PLAN OF REORGANIZATION, DATED 10/16/2013

ARTICLE I
SUMMARY

      This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Budinger Windmill Trust (the "Debtor").

      This Plan provides for nine (9) classes of secured claims; one (1) class of unsecured claims; and one (1) class of equity security holders. This Plan also provides for the payment of administrative and priority claims to the extent permitted by the Code or the claimant's agreement.

      All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders is being served contemporaneously with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

Exhibit A

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

Class 1.    The claim of Wells Fargo, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in Windmill Point

Class 2.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 1401 Budinger

Class 3.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 1525 Budinger

Class 4.    The claim of PNC Bank, National Association, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2468 Smith Street

Class 5.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in that portion of 1401 Budinger having parcel identification number ending in 10010 for 2013 real estate taxes

Class 6.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in that portion of 1401 Budinger having parcel identification number ending in 10020 for 2013 real estate taxes

Class 7.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 1525 Budinger for 2013 real estate taxes

Class 8.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2468 Smith Street for 2013 real estate taxes

Class 9.    The claim of the Osceola County, Florida Tax Collector, to the extent allowed as a secured claim under §506 of the Code against the Debtor's interest in 2425 Pleasant Hill Road for 2013 real estate taxes

Class 10.   All unsecured claims allowed under § 502 of the Code

Class 11.   Equity interests of the Debtor

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified claims</u>.    Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the Effective Date,  in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will receive on account of such claim regular monthly payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period commencing thirty (30) days after the Effective Date and ending not later than 5 years after the date of the order for relief.

3.04    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U. S. C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class1 – Secured Claim of Wells Fargo | Yes | *Lien*:  The holder of the Class 1 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 2 – Secured Claim of PNC as to 1401 Budinger | Yes | *Lien*:  The holder of the Class 2 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 3 – Secured Claim of PNC as to 1525 Budinger | Yes | *Lien*:  The holder of the Class 3 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 4 – Secured Claim of PNC as to 2468 Smith Street | Yes | *Lien*:  The holder of the Class 4 Claim will retain the lien securing the claim to the extent of the allowed amount of the claim.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments*: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by amortizing the allowed amount of the claim over a 20 year period at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order.<br><br>*Payments End*: all unpaid amounts shall be due and payable (balloon) five (5) years after the payments begin. |
| Class 5 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on that portion of 1401 Budinger having parcel identification number ending in 10010 | Yes | *Lien*:  The holder of the Class 5 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay*:  The holder of the Class 5 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest*:  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>Payments: The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date of the plan and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 6 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on that portion of 1401 Budinger having parcel identification number ending in 10020 | Yes | *Lien:*  The holder of the Class 6 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 6 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date of the plan and August 1, 2018 at the Till Rate.<br><br>*Payments Begin*:  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 7 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on 1525 Budinger | Yes | *Lien:*  The holder of the Class 7 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 7 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 8 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on 2468 Smith Street | Yes | *Lien:*  The holder of the Class 8 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 8 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |
| Class 9 – Secured claim of Osceola County, Florida Tax Collector, for 2013 real estate taxes on Windmill Point | Yes | *Lien:*  The holder of the Class 9 Claim will retain the liens securing the claim to the extent of the allowed amount of the claim.<br><br>*Relief from Stay:*  The holder of the Class 9 Claim shall be entitled to relief from the automatic stay so that it can sell a tax certificate for any real estate taxes owed for 2013.<br><br>*Interest:*  The allowed amount of the claim shall accrue interest from the Effective Date at the Till Rate (defined below in Article VIII).  As of the date of this Plan, the Till Rate is 5%.<br><br>*Payments:* The claim shall be paid in equal monthly payments of principal and interest, with the payment amount being calculated by fully amortizing the allowed amount of the claim over the number of months remaining from the Effective Date and August 1, 2018 at the Till Rate.<br><br>*Payments Begin:*  the later of thirty (30) days after the Effective Date, or the date on which such claim is allowed by a final nonappealable order. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 10 - Allowed Unsecured Creditors | Yes | $5,000.00 will be paid to holders of Allowed Unsecured Claims on a pro rata basis. |
| Class 11 - Equity Security Holders of the Debtor | Yes | Interests will be canceled |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04    Minimum Distribution Amount.  Notwithstanding any other provision of this Plan, there shall be no distribution of less than $20.00 on account of any Allowed Claim or Interest.

8

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the  Effective Date:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| MBT Homes<br>117B Broadway<br>Kissimmee, FL 34741 | Leasing and property maintenance 4% of gross rent collected, paid annually |
| Stadium Place Administration<br>117 Broadway, Suite B<br>Kissimmee, FL 34741 | Property management and financial accounting 4% of gross rent collected, paid annually |
|  | All liability, property and casualty insurance policies in effect that have not expired as of the Effective Date |
| Various – See Exhibit "1" | Leases of non-residential real property, where the Debtor is the Landlord |

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

This Plan will be implemented as follows:

7.01    Funding and Implementation of the Plan.  The distributions required under this Plan will be funded from the following sources:

a.    cash on hand and on deposit;

b.    revenues from future operations of the Debtor's business;

9

       c.     capital raised from the issuance of membership interests in the Reorganized Debtor.   The transaction relating to the issuance of membership interests will be closed under the Funding Agreement attached as Exhibit "2"; and

       d.     the contribution of $10,000.00 which will be made by Randy Sheive (the "Randy Sheive Contribution") pursuant to the provisions of section 9.02 below.

    7.02   <u>Conversion of Debtor to a Florida Limited Liability Company</u>.  Pursuant to Fla. Stat. §608.439(1), the Debtor shall convert from a land trust organized under Fla. Stat. §689.071 to a Florida Limited Liability Company organized under Fla. Stat. Chapter 608 and will use the name "Budinger Windmill Trust, LLC."

    7.03   <u>Amendment to Articles of Organization and Operating Agreement.</u>  The Articles of Organization and the Operating Agreement of the Debtor shall contain provisions consistent with the Plan and Bankruptcy Code.

    7.04   <u>Manager</u>.  The manager of the Debtor shall be Budinger Windmill, LLC, which shall not receive any compensation for its service as manager.

    7.05   <u>Retention and Re-Titling of Assets</u>.  The Debtor shall retain all assets of the estate.  Any titled assets, such as real property, shall be transferred or re-titled from the Debtor, as land trust to the reorganized Debtor: Budinger Windmill Trust, LLC.  The transfers will be made no later than thirty (30) days after the Effective Date and the transfers shall be exempt from documentary stamp taxes pursuant to 11 U. S. C. §1146.

ARTICLE VIII<br><u>GENERAL PROVISIONS</u>

    8.01   <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

       (a)    **Pro Rata Share** shall mean with respect to any Distribution, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

       (b)    **Till Rate** means the "U. S. Prime Rate" denoted as such and published in The Wall Street Journal under "Money Rates" plus 1.75%.   As of the date of this Plan, the U. S. Prime Rate is 3.25% and the Till Rate is 5%.

10

(c)   **1401 Budinger** means the real property owned by the Debtor which has the legal description listed in Exhibit "3"

(d)   **1525 Budinger** means the real property owned by the Debtor which has the legal description listed on Exhibit "4

(e)   **2468 Smith Street** means the real property owned by the Debtor which has the legal description listed on exhibit "5"

(f)   **Windmill Point** means the real property owned by the Debtor which has the legal description listed on exhibit "6"

8.02   <u>Effective Date of Plan</u>.   **Effective Date** means the first business day following the date that is twenty eight (28) days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03   <u>Severability</u>.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04   <u>Binding Effect</u>.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05   <u>Captions</u>.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

ARTICLE IX
<u>DISCHARGE, INJUNCTION AND THIRD PARTY RELEASES</u>

9.01   <u>Discharge of Claims Against the Debtor</u>.   On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt imposed by this Plan.

9.02   <u>Release/Injunction</u>.   The Plan is premised upon the following described release and injunction:

a.   **Party to be released**: *Randy Sheive;*

11

        **b.**     **Entities Subject to the Injunction and Release:** *the Debtor, Parties in Interest, Unsecured Creditors, and Interest Holders;*

        **c.**     **Claims Released and Acts Enjoined:** *Randy Sheive shall be released from all claims related to the Debtor that arose prior to the Effective Date, including, but not limited to any and all claims arising from any mortgage deficiencies. Further, the Debtor, Parties in Interest, Unsecured Creditors, and Interest Holders shall be permanently enjoined from asserting, prosecuting or collecting any of the released claims from Randy Sheive. Provided, however, that such injunction shall not apply to any claim asserted against the Reorganized Debtor by a claimant based upon a default by the Reorganized Debtor in performance of its obligations to the claimant under the Plan and operative documents between the Reorganized Debtor and the claimant.*

Respectfully submitted.

Budinger Windmill Trust

by: Budinger Windmill, LLC as Trustee

by: _____
    Randy Sheive, Manager


        */s/ Kenneth D. Herron, Jr.*
        Kenneth D. (Chip) Herron, Jr.
        Florida Bar No. 699403
        Wolff, Hill, McFarlin & Herron, P.A.
        1851 W. Colonial Dr.
        Orlando, FL 32804
        Telephone: (407) 648-0058
        Fax: (407) 648-0681
        Email: kherron@whmh.com

        Attorneys for Budinger Windmill Trust

12

# Exhibit 1

| Property Address | Primary Tenant | Monthly Rent Amount | Lease Start Date | Lease End Date |
|---|---|---|---|---|
| 2425-2427 Pleasant Hill Rd | Jacquiline Matos | $ 2,050.00 | 09/01/08 | MM |
| 2429 Pleasant Hill Rd | Maldonado, Nayra | $ 1,946.88 | 12/01/11 | 11/30/13 |
| 2431 Pleasant Hill Rd | UZ Mobile Inc | $ 2,429.91 | 09/01/10 | MM |
| 2433 Pleasant Hill Rd | Poinciana Supermarket Inc | $11,766.65 | 09/15/09 | 09/30/14 |
| 2435 Pleasant Hill Rd | MJ&T of Kissimmee, LLC | $ 1,856.25 | 08/01/09 | MM |
| 2437 Pleasant Hill Rd | Torres, Julio | $ 1,800.00 | 07/01/13 | 06/30/15 |
| 2439 Pleasant Hill Rd | Esperanza Delacaridad Noboa | $ 1,100.00 | 12/01/10 | MM |
| 2441 Pleasant Hill Rd | John Anthony Natale | $ 832.00 | 02/01/13 | 01/31/15 |
| | | $23,781.69 | | |
| | | | | |
| 1401 Budinger Bldg - Suite A | Stewart Approved Title, Inc | $ 3,616.93 | 01/01/08 | MM |
| 1401 Budinger Bldg - Suite B | Goodwin Realty and Associates, Inc. | $ 2,184.00 | 03/01/12 | 02/28/14 |
| 1401 Budinger Bldg - Suite C | Gammons, Gary | $ 350.00 | 12/15/12 | 12/31/13 |
| 1401 Budinger Bldg - Suite D | | $ - | | |
| 1401 Budinger Bldg - Suite E | Draper, Charlie | $ 900.00 | 04/01/13 | 03/31/15 |
| 1401 Budinger Bldg - Suite F | Brown, Adams | $ 360.00 | 03/01/12 | MM |
| 1401 Budinger Bldg - Suite G | | $ - | | |
| 1401 Budinger Bldg - Suite H-I | | $ - | | |
| 1401 Budinger Bldg - Suite I | | $ - | | |
| 1401 Budinger Bldg - Suite J | | $ - | | |
| | | $ 7,410.93 | | |
| | | | | |
| Smith Street | Florida Armature Works, Inc. and German Garcia | $ 1,000.00 | 09/01/09 | MM |
| Smith Street | | $ - | | |
| | | | | |
| 1525 Budinger Building - 15 | St. Cloud Hospital | $ 3,173.33 | 06/01/11 | 05/31/14 |
| 1525 Budinger Building - 15 | Osceola Regional Hospital | $ 2,666.67 | 06/01/11 | 05/31/14 |
| 1525 Budinger Building - 15 | Orlando Regional Healthcare System | $ 4,000.00 | 06/01/11 | 05/31/14 |
| | | $ 9,840.00 | | |
| | | | | |
| | **Totals** | **$ 41,032.62** | | |

# Exhibit 2

## FUNDING AGREEMENT

This Agreement is made and entered into as of October 9, 2013, by and between Budinger Windmill Trust (he "Debtor") and Randy Sheive and Rebecca A. Sheive, as tenants by the entireties ("Investor").  In consideration of the mutual promises contained herein, the parties agree as follows:

1.      <u>Plan of Reorganization</u>.   This Agreement is being entered into in connection with the Debtor's Plan of Reorganization dated October 9, 2013 ("Plan"), being proposed by the Debtor in a the Debtor's Chapter 11 reorganization case, *In re: Budinger Windmill Trust*,  Case No 6:13-bk-09907-KSJ, United States Bankruptcy Court, Middle District of Florida, Orlando Division.  The defined terms used in the Plan shall have the same definition when used in this Agreement unless otherwise defined in this Agreement.

2.      <u>Investment in Debtor</u>.  The Plan provides, in part, that:

a.      all equity interests in the Debtor are being cancelled as of the Effective Date;

b.      the Debtor will be converted from a land trust organized pursuant to Fla. Stat. §697.01 to a Limited Liability Company organized under Fla. Stat. Chapter 608, which will be named Budinger Windmill Trust, LLC (the "LLC"); and

c.      the LLC will raise capital for its business operations through the issuance of membership interests in the LLC.  The funds raised from the issuance of membership interests will be used, in part, to fund obligations of the Debtor under the Plan.

# Exhibit 2

3.       <u>Purchase of Membership Interest.</u>     Investor     shall     make     capital contributions to the LLC in the amount $10,000.00 (the "Capital Contribution").

4.       <u>Conditions Precedent</u>. The Investor's obligations under this Agreement are subject to the following conditions, to be satisfied prior to or on the Effective Date:

a.       The Debtor's business will continue to be conducted and managed by the Debtor as Debtor-in-Possession, in the ordinary course;

b.       The Debtor will not dispose of substantial assets out of the ordinary course of business without the prior consent of the Investor;

c.       The Plan shall not have been amended or modified without the prior consent of the Investor;

d.       There shall be no material adverse change in the assets, business, or financial condition of the Debtor between the date of this Agreement and the Effective Date;

e.       The total amount of the Allowed Secured Claims of PNC Bank, National Association shall not exceed $1,333,000; and

f.       The total amount of the Allowed Secured Claim of Wells Fargo Bank, N. A. shall not exceed $1,900,000.00.

If any of these conditions have not been

5.       <u>Membership Interests</u>.   Membership interests in Debtor shall be issued to the Investor on the Effective Date, such that Investors shall hold 100% of the issued and outstanding Interests in the LLC.

# Exhibit 2

6.    <u>Deposit</u>.  As a condition of the obligations of the Debtor hereunder, no later than November 1, 2013, Investor shall deposit the sum of $10,000.00 in escrow with the Debtor's attorney, Kenneth D. Herron, Jr., Wolff, Hill, McFarlin & Herron, P. A. 1851 W. Colonial Drive, Orlando, Florida 32804 ("Deposit").

7.    <u>Failure of Conditions Precedent.</u>  The Deposit shall be returned to the Investor, without interest, if:

a.    a condition precedent is not satisfied and Investor makes written demand for return of the Deposit;

b.    the Agreement is terminated by the Debtor as a result of a higher offer as provided herein; or

c.    confirmation of the Plan is denied.

8.    <u>Higher Offer</u>.  If the Debtor receives a higher offer that meets the following conditions (a "Qualified Offer"), then this Agreement shall be terminated and the Debtor shall sell the membership interests in the LLC pursuant to the provisions of paragraph 9 below:

a.    the offer must be received by the Debtor or the attorney for the Debtor no  later than 14 days after the entry of the Order scheduling the hearing to consider confirmation of the Plan (the "Confirmation Hearing");

b.    the offer complies with the terms of this Agreement;

c.    the offer is in an amount not less than $12,500.00;

d.    the offer must be accompanied by a deposit in the form of a cashier's check in the amount of $12,500.00 payable to Wolff Hill McFarlin & Herron,

# Exhibit 2

P.A. Trust Account; and

   e.   the offer must contain an acknowledgement that the party making the offer does not require any further due diligence and has relied solely upon its own independent review in making its offer.

   9.   <u>Auction of Membership Interests.</u>   If the Debtor receives a Qualified Offer, then the Debtor shall sell its membership interests in an auction on the following terms and conditions:

   a.   Time and Place of Auction.  The auction shall be conducted at 2:00 P. M. (EST) on the day that is one week prior to the Confirmation Hearing at the Debtor's attorney's office, Wolff, Hill, McFarlin & Herron, P. A. , 1851 W. Colonial Dr., Orlando, Florida 32804.  The Debtor's attorney will provide notice to Qualified Bidders of the auction date and time;

   b.   Only Qualified Bidders will be permitted to participate in the auction, but may do so in person or via telephone; Qualified Bidder.  The following persons shall be deemed "Qualified Bidders":  Investor and any and all persons submitting Qualified Bids;

   c.   Qualified Bidders shall be bound by the terms of this Agreement and shall have all rights and obligations of the Investor under this Agreement;

   d.   The opening bid shall be the highest Qualified Bid made by a Qualified Bidder prior to the auction;

   e.   Bids after the opening bid must be in minimum increments of $2,500.00;

# Exhibit 2

f.      After 5 minutes have passed without another bid being made, the last bid shall be the successful bid and the bidder shall be the successful bidder ("Successful Bidder");

g.      The Deposit paid by the Successful Bidder will immediately become nonrefundable.

h.      If for any reason the Successful Bidder fails to close the transaction on the Effective Date, then the Debtor shall be authorized without further notice, hearing or order, to close the sale with the bidder that submitted the second highest bid (the "Next Highest Bidder");

i.      Deposits paid by all bidders other than the Successful Bidder and the Next Highest Bidder shall be returned to such bidders not later than 3 days following the auction;

j.      Upon closing with the Successful Bidder, the Deposit paid by the Next Highest Bidder will be refunded to it.  If the Successful Bidder fails to close, the Deposit paid by it will be forfeited to the Debtor.  The Deposit paid by the Next Highest Bidder will then be applied to the purchase price at closing.  If the Next Highest Bidder then fails to close, the Deposit paid by it will be forfeited to the Debtor and the Debtor may attempt to sell the membership interests in any manner it deems reasonable; and

k.      No bidder will be entitled to any interest as a result of paying the Deposit.

# Exhibit 2

10. <u>Taxes</u>. Investor shall pay all transfer, stamp or intangible taxes relating to, occurring out of, or in connection with this transaction, if any.

AGREED to as of the date first set forth above.

Debtor:                                    Investor:

Budinger Windmill Trust

   by: Budinger Windmill, LLC, as Trustee

                                               Randy L. Sheive

  by: _____
      Randy Sheive, Manager

                                               Rebecca A. Sheive

# Exhibit 3

**1401 BUDINGER**:

**Legal Description**:

> UNIT 1, 1401 BUDINGER OFFICE CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM SET FORTH IN O. R. BOOK 927, PAGE 336, AND AS SHOWN IN CONDOMINIUM EXHIBIT BOOK 2, PAGE 135, PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH THE UNDIVIDED INTEREST IN THE COMMON ELEMENTS ATTACHING THERETO ACCORDING TO THE AFOREMENTIONED DECLARATION.

> UNIT 2, 1401 BUDINGER OFFICE CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM RECORDED IN OFFICIAL RECORDS BOOK 927, PAGE 336, AND AS SHOWN IN CONDOMINIUM EXHIBIT BOOK 2, PAGE 135, PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH THE COMMON ELEMENTS ATTACHING THERETO.

**Street Address:** 1401 Budinger, Ave.

**Parcel ID:** PARCEL ID: 10-26-30-0026-0001-0010
PARCEL ID: 10-26-30-0026-0001-0020

# Exhibit 4

**1525 BUDINGER:**

**Legal Description:**

> LOTS 13 THROUGH 24 BLOCK 319, TOWN OF ST CLOUD ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK B PAGE 33 AND 34 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA.

**Street Address:** 1525 Budinger Ave.

**Parcel ID:** 01-26-30-0001-0319-0130

# Exhibit 5

**2468 SMITH**

**Legal Description:**

LOTS 6, 7 AND WEST ½ OF LOT 8, BLOCK 6, W.E. ALLEN SUBDIVISION, AND VACATED 15.0 FEET ALLY LYING SOUTH OF LOTS 6, 7 AND WEST ½ OF LOT 8, BLOCK 6, W.E. ALLEN SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN PLAT BOOK 1, PAGE 83 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA, TOGETHER WITH AND SUBJECT TO A NON-EXCLUSIVE EASEMENT OF INGRESS/EGRESS, PARKING, SEWER, WATER AND RETENTION ON THE SOUTH 17.0 FEET AND THE NORTH 65.0 FEET OF LOTS 6-10 OF BLOCK 6, WEST ALLEN SUBDIVISION, PLAT BOOK 1, PAGE 83 OF THE PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA.

**Street Address: 2468 Smith Street**

**Parcel ID:** 15-25-29-2530-6-0060

# Exhibit 6

**Windmill Point:**

**Legal Description:**

Tracts A and B (Commercial Tracts) WINDMILL POINT UNIT 1, according to the Plat thereof, as recorded in Plat Book 7, Pages 124 through 127, Public Records of Osceola County, Florida.

Street Address: 2425 Pleasant Hill Road

**Parcel ID:** 17-26-29-5550-001-00A0
         17-26-29-5550-001-00B0

# Identity and Fair Market Value of the Estate's Assets

| Description | Fair Market Value | Source of Value |
|---|---|---|
| **Real Property** | | |
| 1401 Budinger Ave.<br>Saint Cloud, Florida<br>Parcel: 1026300026000100010<br>Parcel: 1026300026000100020 | $ 435,000.00 | Debtor Estimate |
| 1525 Budinger Ave.<br>Saint Cloud, Florida<br>Parcel: 012630000103190130 | $ 680,000.00 | Debtor Estimate |
| 2468 Smith Street<br>Kissimmee, Florida<br>Parcel: 152529253000060060 | $ 200,000.00 | Debtor Estimate |
| 2425 Pleasant Hill Road<br>Kissimmee, Florida<br>Parcel: 1726295550000100A0<br>Parcel: 1726295550000100B0 | $ 2,110,000.00 | Debtor Estimate |
| **Personal Property** | | |
| Funds on Deposit - derived from rents on properties subject to Wells Fargo mortgage | $ 3,308.11 | Bank statement |
| Funds on Deposit - derived from rents related to properties subject to PNC mortgages | $ 47,967.65 | Bank statement |
| Rents receiveable - on properties subject to PNC mortgages | Gross amount $8,240.00; Fair market value unknown | |
| Rents receivable - on properties subject to Wells Fargo mortgage | Gross amount $32,107.61; Fair market value unknown | |

**EXHIBIT B**

# The Debtor's Most Recent Financial Statements Issued Before Bankruptcy

*Management of the Debtor does not recall issuing any financial statements before this bankruptcy case was filed.*

## Exhibit C - Financial Statements

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

BUDINGER WINDMILL TRUST,

                    Debtor.

_____/

Case No.: 6:13-bk-09907-KSJ

Chapter 11

## DEBTOR'S PERIODIC FINANCIAL REPORT FOR THE PERIOD FROM AUGUST 8, 2013 THROUGH AUGUST 31, 2013

Budinger Windmill Trust files its periodic financial report for the period from August 8, 2013 through August 31, 2013 in accordance with the guidelines established by the United States Trustee and F.R.B.P. 2015 in the form attached hereto this 24th day of September, 2013.

/s/ Kenneth D. Herron, Jr.
Kenneth D. (Chip) Herron, Jr.
Florida Bar No. 699403
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Dr.
Orlando, FL 32804
Telephone: (407) 648-0058
Fax: (407) 648-0681
Email: kherron@whmh.com

Attorneys for the Debtor

# Exhibit D

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS

FOR THE PERIOD BEGINNING **8/8/2013** AND ENDING **8/31/2013**

Name of Debtor: **Budinger Windmill Trust**  
Date of Petition: 08/08/2013

Case No. **6:13-bk-09907-KSJ**

| | CURRENT MONTH | PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | 51,275.76 (a) | 51,275.76 (b) |
| 2. RECEIPTS: | | |
| A. Cash Sales | 0.00 | 0.00 |
| Minus: Cash Refunds | (- 0.00 | 0.00 |
| Net Cash Sales | - | 0.00 |
| B. Accounts Receivable | 0.00 ) | 0.00 |
| (If you receive rental income, you must attach a rent roll.) | 31,540.14 | 31,540.14 |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | 31,540.14 | 31,540.14 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | 82,815.90 | 82,815.90 |
| 5. DISBURSEMENTS: | | |
| A. Advertising | 0.00 | 0.00 |
| B. Bank Charges | 0.00 | 0.00 |
| C. Contract Labor | 0.00 | 0.00 |
| D. Fixed Asset Payments (not incl. in "N") | 0.00 | 0.00 |
| E. Insurance | 0.00 | 0.00 |
| F. Inventory Payments (See Attach. 3) | 0.00 | 0.00 |
| G. Leases | 0.00 | 0.00 |
| H. Manufacturing Supplies | 0.00 | 0.00 |
| I. Office Supplies | 0.00 | 0.00 |
| J. Payroll - Net (See Attachment 4B) | 0.00 | 0.00 |
| K. Professional Fees (Accounting & Legal) | 0.00 | 0.00 |
| L. Rent | 0.00 | 0.00 |
| M. Repairs & Maintenance | 0.00 | 0.00 |
| N. Secured Creditor Payments (See Attach. 2) | 0.00 | 0.00 |
| O. Taxes Paid - Payroll (See Attachment 5C) | 0.00 | 0.00 |
| P. Taxes Paid - Sales & Use (See Attachment 5C) | 0.00 | 0.00 |
| Q. Taxes Paid - Other (See Attachment 5C) | 0.00 | 0.00 |
| R. Telephone | 0.00 | 0.00 |
| S. Travel & Entertainment | 0.00 | 0.00 |
| Y. U.S. Trustee Quarterly Fees | 0.00 | 0.00 |
| U. Utilities | 0.00 | 0.00 |
| V. Vehicle Expenses | 0.00 | 0.00 |
| W. Other Operating Expenses (Pulls from MOR-3) | 0.00 | 0.00 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 0.00 | 0.00 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 82,815.90 | 82,815.90 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This _23rd_ day of _September_, 20_13_.

**Budinger Windmill Trust**  
by Budinger Windmill, LLC, trustee

by: _[signature]_  
Randy Shewe, Manager

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.  
(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition  
(c) These two amounts will always be the same if form is completed correctly.

MOR-2

# Exhibit D

## MONTHLY SCHEDULE OF RECEIPTS AND DISBURSEMENTS (cont'd)

### Detail of Other Receipts and Other Disbursements

**OTHER RECEIPTS:**

Describe Each Item of Other Receipt and List Amount of Receipt. Write totals on Page MOR-2, Line 2C

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| Credit Memo - Centerstate Bank 8/19 | 3,870.12 | 3,870.12 |
| Rent Collected | 27,668.32 | 27,668.32 |
| Interest Income - Centerstate Bank | 1.70 | 1.70 |
| | | - |
| | | - |
| | | - |
| | | - |
| TOTAL OTHER RECEIPTS | 31,540.14 | 31,540.14 |

"Other Receipts" includes Loans from Insiders and other sources (i.e. Officer/Owner, related parties directors, related corporations, etc.). Please describe below:

| Loan Amount | Source of Funds | Purpose | Repayment Schedule |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**OTHER DISBURSEMENTS:**

Describe Each Item of Other Disbursement and List Amount of Disbursement. Write totals on Page MOR-2, Line 5W

| Description | Current Month | Cumulative Petition to Date |
|---|---|---|
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| TOTAL OTHER DISBURSEMENTS | 0.00 | 0.00 |

**NOTE: Attach a current Balance Sheet and Income (Profit & Loss) Statement.**

# Exhibit D
MOR-8

## ATTACHMENT 1

## MONTHLY ACCOUNTS RECEIVABLE RECONCILIATION AND AGING

Name of Debtor: **Budinger Windmill Trust**          Case Number: **6:bk-13-09907-KSJ**

Reporting Period beginning:      **8/8/2013**          Period ending          **8/31/2013**

ACCOUNTS RECEIVABLE AT PETITION DATE:      $0.00

### ACCOUNTS RECEIVABLE RECONCILIATION

(Include <u>all</u> accounts receivable, pre-petition and post-petition, including charge card sales which have not been received):

| | |
|---|---|
| Beginning of Month Balance | $ _____ 0 (a) |
| PLUS: Current Month New Billings | $ _____ 0 |
| MINUS: Collection During the Month | $ _____ 0 (b) |
| PLUS/MINUS: Adjustments or Writeoffs | $ _____ 0 * |
| End of Month Balance | $ _____ 0 (c) |

*For any adjustments or Write-offs provide explanation and supporting documentation, if applicable:

_____

_____

### POST PETITION ACCOUNTS RECEIVABLE AGING

(Show the total for each aging category for all accounts receivable)

| 0-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Total |
|---|---|---|---|---|
| $ - | $ - | $ - | $ - | $ - (c) |

For any receivables in the "Over 90 Days" category, please provide the following:

| Customer | Receivable Date | Status (Collection efforts taken, estimate of collectibility, write-off, disputed account, etc.) |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This must equal the number reported in the "Current Month" column of Schedule of Receipts and Disbursements (Page MOR-2, Line 2B).

(c)These two amounts must equal.

## Exhibit D

MOR-4

## ATTACHMENT 2
## MONTHLY ACCOUNTS PAYABLE AND SECURED PAYMENTS REPORT

Name of Debtor: **Budinger Windmill Trust**   Case Number: **6:bk-13-09907-KSJ**

Reporting Period beginning: **8/8/2013**   Period ending **8/31/2013**

In the space below list all invoices or bills incurred and not paid <u>since the filing of the petition</u>. <u>Do not</u> include amounts owed prior to filing the petition. In the alternative, a computer generated list of payables may be attached provided all information requested below is included.

### POST-PETITION ACCOUNTS PAYABLE

| Date Incurred | Days Outstanding | Vendor | Description | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL AMOUNT _____ _____ _____ _____ (b)_____

☐ **Check here if pre-petition debts have been paid. Attach an explanation and copies of supporting documentation.**

### ACCOUNTS PAYABLE RECONCILIATION (Post Petition Unsecured Debt Only)

| | | |
|---|---|---|
| Opening Balance | $ 0 | (a) |
| PLUS: New Indebtedness Incurred This Month | $ 0 | |
| MINUS: Amount Paid on Post Petition, Accounts Payable This Month | $ 0 | |
| PLUS/MINUS: Adjustments | $ 0 | * |
| Ending Month Balance | $ 0 | (c) |

*For any adjustments provide explanation and supporting documentation, if applicable.

### SECURED PAYMENTS REPORT

List the status of Payments to Secured Creditors and Lessors (Post Petition Only). If you have entered into a modification agreement with a secured creditor/lessor, consult with your attorney and the United States Trustee Program prior to completing this section).

| Secured Creditor/Lessor | Date Payment Due This Month | Amount Paid This Month | Number of Post Petition Payments Delinquent | Total Amount of Post Petition Payments Deliquent |
|---|---|---|---|---|
| Wells Fargo Bank, National Assoc. | 8/15/2013 | $ - | 1 | 1 |
| | | | | |
| | | | | |
| | | | | |

TOTAL _____ $ - (d) _____

(a)This number is carried forward from last month's report. For the first report only, this number will be zero.

(b, c)The total of line (b) must equal line (c).

(d)This number is reported in the "Current Month" column of Schedule of Receipts and Disbursements (Page MOR-2, Line 5N).

# Exhibit D

MOR-3

**ATTACHMENT 3**
**INVENTORY AND FIXED ASSETS REPORT**

Name of Debtor: _____Budinger Windmill Trust_____    Case Number: _____6:bk-13-09907-KSJ_____

Reporting Period beginning: _____8/8/2013_____    Period ending _____8/31/2013_____

**INVENTORY REPORT**

INVENTORY BALANCE AT PETITION DATE:                            $ _____0_____

INVENTORY RECONCILIATION:

    Inventory Balance at Beginning of Month          $ _____0_____ (a)

       PLUS: Inventory Purchased During Month    $ _____0_____

       MINUS: Inventory Used or Sold                      $ _____0_____

       PLUS/MINUS: Adjustments or Write-downs    $ _____0_____

    Inventory on Hand at End of Month                 $ _____0_____

METHOD OF COSTING INVENTORY: _____

*For any adjustments or write-downs provide explanation and supporting documentation, if applicable.

**INVENTORY AGING**

| Less than 6 months old | 6 months to 2 years old | Greater than 2 years old | Considered Obsolete | Total Inventory |
|---|---|---|---|---|
| _____ % | _____ % | _____ % | _____ % = | _____ % * |

* Aging Percentages must equal 100%.

☐  Check here if inventory contains perishable items.

**Description of Obsolete Inventory:** _____

**FIXED ASSET REPORT**

FIXED ASSETS FAIR MARKET VALUE AT PETITION DATE:          $ _____-_____ (b)

(Includes Property, Plant and Equipment)

BRIEF DESCRIPTION (First Report Only)    _____The Debtor has no fixed assets other than real estate._____

FIXED ASSETS RECONCILIATION:

Fixed Asset Book Value at Beginning of Month          $ __3,425,000.00__ (a)(b)

       MINUS:  Depreciation Expense                      $ _____

       PLUS:  New Purchases                                   $ _____

       PLUS/MINUS: Adjustments or Write-downs    $ _____ *

Ending Monthly Balance                                           $ __3,425,000.00__

*For any adjustments or write-downs, provide explanation and supporting documentation, if applicable.

  BRIEF DESCRIPTION OF FIXED ASSETS PURCHASED OR DISPOSED OF DURING THE REPORTING PERIOD:

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)Fair Market Value is the amount at which fixed assets could be sold under current economic conditions. Book Value is the cost of the fixed assets minus accumulated depreciation and other adjustments.

**Exhibit D**

<u>ATTACHMENT 4A</u>

<u>MONTHLY SUMMARY OF BANK ACTIVITY - OPERATING ACCOUNT</u>

Name of Debtor:      Budinger Windmill Trust      Case Number:      6:bk-13-09907-KSJ

Reporting Period beginning:      8/8/2013      Period ending      8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity.  A standard bank reconciliation form can be found at http://www.usdoj.gov/ust/r21/reg_info.htm.  If bank accounts other than the three required by the United States Trustee Program are necessary, permission must be obtained from the United States Trustee prior to opening the accounts.  Additionally, use of less than the three required bank accounts must be approved by the United States Trustee.

BANK:      CenterState Bank      BRANCH:

NAME:      Budinger Windmill      NUMBER: xxxx3271

PURPOSE OF ACCOUNT:      Prepetition Account (Closed) Funds Transferred to DIP Acct xxxx5881

| | | |
|---|---|---|
| Ending Balance per Bank Statement | $ | - |
| Plus Total Amount of Outstanding Deposits | $ | - |
| Minus Total Amount of Outstanding Checks and other debits | $ | - * |
| Minus Service Charge | $ | - |
| Ending Balance per Check Register | $ | - **(a) |

* Debit cards are used by:      NONE

** If Closing Balance if negative, provide explanation:

**The following disbursements were paid in Cash (do not includes items reported as Petty Cash on Attachment 4D:**
( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**TRANSFERS BETWEEN DEBTOR IN POSSESSION ACCOUNTS**

"Total Amount of Outstanding Checks and other debits", listed above, includes:

| | |
|---|---|
| $ | Transferred to Payroll Account |
| $ | Transferred to Tax Account |

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as  "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

**Exhibit D**



# CenterState Bank

*Member of FDIC*

CenterState Bank of Florida
Kissimmee Branch
920 N. John Young Parkway
Kissimmee, FL 34741
Telephone: 407-847-3800
24 Hour Inquiry: (888)292-7005
Internet: www.centerstatebank.com

30
RANDY LYNN SHEIVE
JOLENE DAWN SHEIVE
TIP TOP ACCOUNT
117B BROADWAY
KISSIMMEE FL 34741-5713

Statement Date    08/20/2013

PAGE    1 of 1

| INTEREST CHECKING | ACCOUNT NO. | ■3271 |
|---|---|---|

## Summary of Activity Since Your Last Statement

| | | |
|---|---|---|
| Balance Forward From  08/12/2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 47,968.87 | + |
| 2 Deposits/Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3,870.58 | + |
| 1 Withdrawals/Debits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 51,839.45 | - |
| Service Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | .00 | - |
| Ending Balance As Of  08/20/2013 . . . . . . . . . . . . . . . . . . . . . . . . . | .00 | |
| Days In Earnings Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| Annual Percentage Yield Earned . . . . . . . . . . . . . . . . . . . . . . . . . . . | .05% | |
| Interest Paid YTD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32.90 | |

## ──── MISCELLANEOUS DEBITS ────

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 8/19 | Closing Entry | 51,839.45 |

## ──── DEPOSITS AND OTHER CREDITS ────

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 8/19 | Interest Paid at Closing | .46 |
| 8/19 | Credit Memo | 3,870.12 |

# Exhibit D

2:07 PM
08/20/13

# Tip Top
## Reconciliation Detail
### 10000 · Tip Top - CenterState checking, Period Ending 08/10/2013

| Type | Date | Num | Name | Clr | Amount | Balance |
|---|---|---|---|---|---|---|
| **Beginning Balance** | | | | | | 29,484.60 |
|   **Cleared Transactions** | | | | | | |
|     **Checks and Payments - 16 items** | | | | | | |
| Check | 07/03/2013 | 3539 | Candy Moses | X | -120.00 | -120.00 |
| Check | 07/15/2013 | 3592 | Moran Kidd Attorne... | X | -6,242.70 | -6,362.70 |
| Check | 07/22/2013 | 3540 | Colleen Sheive | X | -22,000.00 | -28,362.70 |
| Check | 07/22/2013 | | Returned Check Ba... | X | -3,870.12 | -32,232.82 |
| Check | 07/22/2013 | 3541 | Diners Club | X | -1,132.16 | -33,364.98 |
| Check | 07/22/2013 | | Florida Department ... | X | -797.50 | -34,162.48 |
| Check | 07/22/2013 | | Florida Department ... | X | -531.67 | -34,694.15 |
| Check | 07/22/2013 | 3545 | State Farm | X | -453.65 | -35,147.80 |
| Check | 07/22/2013 | 3546 | City of St Cloud | X | -100.82 | -35,248.62 |
| Check | 07/22/2013 | | Florida Department ... | X | -93.77 | -35,342.39 |
| Check | 07/22/2013 | 3542 | Ryan Herveys Lawn... | X | -80.00 | -35,422.39 |
| Check | 07/22/2013 | 3543 | City of St Cloud | X | -33.49 | -35,455.88 |
| Check | 08/01/2013 | | David Crohe | X | -52.46 | -35,508.34 |
| Check | 08/02/2013 | 3544 | City of St Cloud | X | -33.49 | -35,541.83 |
| Check | 08/05/2013 | | WHMH | X | -10,000.00 | -45,541.83 |
| Check | 08/07/2013 | | Colleen Sheive | X | -20,000.00 | -65,541.83 |
| | **Total Checks and Payments** | | | | -65,541.83 | -65,541.83 |
|     **Deposits and Credits - 4 items** | | | | | | |
| Deposit | 07/22/2013 | | | X | 20,062.43 | 20,062.43 |
| Deposit | 08/05/2013 | | | X | 13,962.43 | 34,024.86 |
| Deposit | 08/05/2013 | | Deposit | X | 50,000.00 | 84,024.86 |
| Deposit | 08/10/2013 | | | X | 1.24 | 84,026.10 |
| | **Total Deposits and Credits** | | | | 84,026.10 | 84,026.10 |
| | **Total Cleared Transactions** | | | | 18,484.27 | 18,484.27 |
| **Cleared Balance** | | | | | 18,484.27 | 47,968.87 |
| **Register Balance as of 08/10/2013** | | | | | 18,484.27 | 47,968.87 |
| **Ending Balance** | | | | | 18,484.27 | 47,968.87 |

# Exhibit D

12:39 PM
09/23/13

# Tip Top
## Reconciliation Detail
### 10000 · Tip Top - CenterState checking, Period Ending 09/10/2013

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 47,968.87 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 1 item** | | | | | | |
| Check | 08/19/2013 | | Budinger Windmill L... | X | -51,839.45 | -51,839.45 |
| Total Checks and Payments | | | | | -51,839.45 | -51,839.45 |
| **Deposits and Credits - 2 items** | | | | | | |
| Deposit | 08/19/2013 | | | X | 0.46 | 0.46 |
| Deposit | 08/19/2013 | | Deposit | X | 3,870.12 | 3,870.58 |
| Total Deposits and Credits | | | | | 3,870.58 | 3,870.58 |
| Total Cleared Transactions | | | | | -47,968.87 | -47,968.87 |
| **Cleared Balance** | | | | | -47,968.87 | 0.00 |
| Register Balance as of 09/10/2013 | | | | | -47,968.87 | 0.00 |
| **Ending Balance** | | | | | -47,968.87 | 0.00 |

# Exhibit D





CenterState Bank of Florida
Kissimmee Branch
920 N. John Young Parkway
Kissimmee, FL 34741
Telephone: 407-847-3800
24 Hour Inquiry: (888)292-7005
Internet: www.centerstatebank.com

1
RANDY LYNN SHEIVE
JOLENE DAWN SHEIVE
TIP TOP ACCOUNT
117B BROADWAY
KISSIMMEE FL 34741-5713

Statement Date          08/11/2013

PAGE        1 of 2

| INTEREST CHECKING | ACCOUNT NO. | ███3271 |
|---|---|---|

## Summary of Activity Since Your Last Statement

|  | | |
|---|---|---|
| Balance Forward From  07/11/2013 ................................... | 29,484.60 | |
| 5  Deposits/Credits ................................................ | 84,036.10 | + |
| 17  Withdrawals/Debits ............................................. | 65,551.83 | - |
| Service Charge ................................................... | .00 | - |
| Ending Balance As Of  08/11/2013 ................................. | 47,968.87 | |
| Days In Earnings Period .......................................... | 32 | |
| Annual Percentage Yield Earned .................................... | .05% | |
| Interest Paid YTD ................................................ | 32.44 | |

### CHECKS  (* - GAP IN SEQUENCE)

| DATE | NUMBER | AMOUNT | DATE | NUMBER | AMOUNT |
|---|---|---|---|---|---|
| 8/02 | 3521 | 52.46 | 8/02 | 3544 | 33.49 |
| 7/23 | 3539 * | 120.00 | 7/26 | 3545 | 453.65 |
| 7/23 | 3540 | 22,000.00 | 7/26 | 3546 | 100.82 |
| 7/29 | 3541 | 1,132.16 | 7/17 | 3592 * | 6,242.70 |
| 7/31 | 3542 | 80.00 | 8/05 | 9999 * | 10,000.00 |
| 8/02 | 3543 | 33.49 | 8/07 | 9999 * | 20,000.00 |

### MISCELLANEOUS DEBITS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 7/22 | FLA DEPT REVENUE/C01 KATHY SHEIVE, T | 797.50 |
| 7/22 | FLA DEPT REVENUE/C01 RANDY SHEIVE | 531.67 |
| 7/22 | FLA DEPT REVENUE/C01 RANDY SHEIVE | 93.77 |
| 7/23 | Returned Deposited Item | 3,870.12 |
| 7/23 | Returned Deposited Item Fee | 10.00 |

### DEPOSITS AND OTHER CREDITS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 7/22 | Deposit | 20,062.43 |
| 8/01 | Refund Chargeback Fee COURTESY REFUND-BANK ERROR | 10.00 |
| 8/05 | Deposit | 50,000.00 |
| 8/05 | Deposit | 13,962.43 |
| 8/09 | Interest Earned | 1.24 |

# Exhibit D





08/02/2013 3521 $52.46



07/26/2013 3545 $453.65



07/23/2013 3539 $120.00



07/26/2013 3546 $100.82



07/23/2013 3540 $22,000.00



07/17/2013 3592 $6,242.70



07/29/2013 3541 $1,132.16



08/05/2013 9999 $10,000.00



07/31/2013 3542 $80.00



08/07/2013 9999 $20,000.00



08/02/2013 3543 $33.49



08/02/2013 3544 $33.49

# Exhibit D

## ATTACHMENT 5A

## CHECK REGISTER - OPERATING ACCOUNT

Name of Debtor:    Budinger Windmill Trust          Case Number:    6:13-bk-09907-KSJ

Reporting Period beginning:    8/8/2013          Period ending:    8/31/2013

NAME OF BANK:    CenterState Bank          BRANCH:

ACCOUNT NUMBER:    xxx3271

PURPOSE OF ACCOUNT:    Prepetition Account (Closed) Funds Transferred to DIP Account xxxx5881

Account for all disbursements, including voids, lost checks, stop payments, etc. In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included.

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|--------------|-------|---------|--------|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL

**Exhibit D**

4:22 PM
09/23/13
Accrual Basis

# Tip Top
## Account QuickReport
### As of August 31, 2013

| Date | Num | Name | Memo | Amount | Balance |
|------|-----|------|------|--------|---------|
| **10000 · Tip Top - CenterState checking** | | | | | |
| 08/10/2013 | | | Interest | 1.24 | 47,967.63 |
| 08/19/2013 | | Deposit | Bank Credit Memo - | 3,870.12 | 47,968.87 |
| 08/19/2013 | | Budinger Windmill L... | To Transfer Funds to New DIP account | -51,839.45 | 51,838.99 |
| 08/19/2013 | | | Interest | 0.46 | -0.46 |
| **Total 10000 · Tip Top - CenterState checking** | | | | -47,967.63 | 0.00 |
| **TOTAL** | | | | -47,967.63 | 0.00 |

# Exhibit D

**ATTACHMENT 4A**

**MONTHLY SUMMARY OF BANK ACTIVITY - OPERATING ACCOUNT**

Name of Debtor:    Budinger Windmill Trust    Case Number:    6:bk-13-09907-KSJ

Reporting Period beginning:    8/8/2013    Period ending    8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity. A standard bank reconciliation form can be found at http://www.usdoj.gov/ust/r21/reg_info.htm. If bank accounts other than the three required by the United States Trustee Program are necessary, permission must be obtained from the United States Trustee prior to opening the accounts. Additionally, use of less than the three required bank accounts must be approved by the United States Trustee.

BANK:    Wells Fargo    BRANCH:

NAME:    Budinger Windmill    NUMBER: xxxx5881

PURPOSE OF ACCOUNT:    DIP Operating Account

| | | |
|---|---|---|
| Ending Balance per Bank Statement | $ | 59,009.45 |
| Plus Total Amount of Outstanding Deposits | $ | - |
| Minus Total Amount of Outstanding Checks and other debits | $ | - * |
| Minus Service Charge | $ | - |
| Ending Balance per Check Register | $ | 59,009.45 **(a) |

\* Debit cards are used by:    NONE

\*\* If Closing Balance if negative, provide explanation:

**The following disbursements were paid in Cash (do not includes items reported as Petty Cash on Attachment 4D:**
( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**TRANSFERS BETWEEN DEBTOR IN POSSESSION ACCOUNTS**

"Total Amount of Outstanding Checks and other debits", listed above, includes:

$ _____ Transferred to Payroll Account

$ _____ Transferred to Tax Account

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

**Exhibit D**

# Wells Fargo Simple Business Checking

Account number: ████5881   ■ August 19, 2013 - August 31, 2013   ■ Page 1 of 3



*Budinger*

BUDINGER WINDMILL LLC
DEBTOR IN POSSESSION
CH 11 CASE 13-09907 MFL
117 BROADWAY STE B
KISSIMMEE FL 34741-5713

### Questions?

Available by phone 24 hours a day, 7 days a week:
**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (287)
        P.O. Box 6995
        Portland, OR  97228-6995

## Your Business and Wells Fargo

The Wells Fargo Business Insight Resource Center offers free access to business information and advice through videos, articles, podcasts and other resources. This site offers objective information from industry experts and best practices from real business owners. Topics include cash flow management, how to build and apply for credit, commercial real estate financing, marketing, and more. Visit the site at wellsfargobusinessinsights.com.

## Account options

A check mark in the box indicates you have these convenient services with your account. Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 8/19 | $0.00 |
| Deposits/Credits | 59,009.45 |
| Withdrawals/Debits | - 0.00 |
| Ending balance on 8/31 | **$59,009.45** |
| Average ledger balance this period | $53,494.06 |

Account number:  9829865881

**BUDINGER WINDMILL LLC**
**DEBTOR IN POSSESSION**
**CH 11 CASE 13-09907 MFL**

Florida account terms and conditions apply

For Direct Deposit and Automatic Payments use
Routing Number (RTN):  063107513

For Wire Transfers use
Routing Number (RTN):  121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

# Exhibit D

WELLS
FARGO

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 8/19 | | Checking Opening Deposit | 51,839.45 | | 51,839.45 |
| 8/29 | | Deposit | 7,170.00 | | 59,009.45 |
| Ending balance on 8/31 | | | | | 59,009.45 |
| Totals | | | $59,009.45 | $0.00 | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 08/19/2013 - 08/31/2013 | | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|---|

Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee.

| How to reduce the monthly service fee by $5.00 | Minimum required | This fee period |
|---|---|---|
| Have any ONE of the following account requirements | | |
| Average ledger balance | $500.00 | $53,494.00 ☑ |

| Monthly service fee discount(s) *(applied when box is checked)* | |
|---|---|
| Online only statements (reduces monthly service fee by $5.00) | ☐ |

C1/C1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Transactions | 5 | 50 | 0 | 0.50 | 0.00 |
| Total service charges | | | | | $0.00 |

# Exhibit D



## General statement policies for Wells Fargo Bank

▪ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
A. The ending balance shown on your statement . . . . . . . . . . . . . $ _____

**ADD**
B. Any deposits listed in your register or transfers into your account which are not shown on your statement

$ _____
$ _____
+ $ _____

. . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
C. The total outstanding checks and withdrawals from the chart above . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same as the current balance shown in your check register . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
| | | |

Total amount $ _____

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

Sheet Seq = 0031850
Sheet 00002 of 00002

# Exhibit D

## Budinger - NEW
## Reconciliation Detail
### 10000 · Wells Fargo Checking, Period Ending 08/31/2013

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| Beginning Balance | | | | | | 0.00 |
| **Cleared Transactions** | | | | | | |
| **Deposits and Credits - 2 items** | | | | | | |
| Deposit | 08/15/2013 | | Deposit | X | 51,839.45 | 51,839.45 |
| Deposit | 08/27/2013 | | | X | 7,170.00 | 59,009.45 |
| Total Deposits and Credits | | | | | 59,009.45 | 59,009.45 |
| Total Cleared Transactions | | | | | 59,009.45 | 59,009.45 |
| Cleared Balance | | | | | 59,009.45 | 59,009.45 |
| Register Balance as of 08/31/2013 | | | | | 59,009.45 | 59,009.45 |
| Ending Balance | | | | | 59,009.45 | 59,009.45 |

# Exhibit D

## ATTACHMENT 5A

## CHECK REGISTER - OPERATING ACCOUNT

Name of Debtor:    Budinger Windmill Trust          Case Number:    6:13-bk-09907-KSJ

Reporting Period beginning:          8/8/2013          Period ending:          8/31/2013

NAME OF BANK:          Wells Fargo          BRANCH:

ACCOUNT NUMBER:          xxxx5881

PURPOSE OF ACCOUNT:                    DIP Operating Account

Account for all disbursements, including voids, lost checks, stop payments, etc.  In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included.

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|--------------|-------|---------|--------|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL

Exhibit D

4:21 PM
09/23/13
Accrual Basis

**Budinger - NEW**
**Account QuickReport**
As of August 31, 2013

| Date | Num | Name | Memo | Amount | Balance |
|------|-----|------|------|--------|---------|
| **10000 · Wells Fargo Checking** | | | | | 0.00 |
| 08/15/2013 | | Deposit | Transfered funds from Tip Top Center/State acct to open Wells Fargo DIP acct | 51,839.45 | 51,839.45 |
| 08/27/2013 | | | Deposit | 7,170.00 | 59,009.45 |
| Total 10000 · Wells Fargo Checking | | | | 59,009.45 | 59,009.45 |
| **TOTAL** | | | | 59,009.45 | 59,009.45 |

# Exhibit D

<u>ATTACHMENT 4A</u>

<u>MONTHLY SUMMARY OF BANK ACTIVITY - OPERATING ACCOUNT</u>

Name of Debtor:     Budinger Windmill Trust     Case Number:     6:bk-13-09907-KSJ

Reporting Period beginning:     8/8/2013     Period ending:     8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity.  A standard bank reconciliation form can be found at http://www.usdoj.gov/ust/r21/reg_info.htm.  If bank accounts other than the three required by the United States Trustee Program are necessary, permission must be obtained from the United States Trustee prior to opening the accounts.  Additionally, use of less than the three required bank accounts must be approved by the United States Trustee.

BANK:     Wells Fargo Bank     BRANCH:

NAME:     Budinger Windmill     NUMBER: xxxx8215

PURPOSE OF ACCOUNT:     Prepetition Account (Closed) Funds Transferred to DIP Acct xxxx5899

| | | |
|---|---|---|
| Ending Balance per Bank Statement | $ | - |
| Plus Total Amount of Outstanding Deposits | $ | - |
| Minus Total Amount of Outstanding Checks and other debits | $ | - * |
| Minus Service Charge | $ | - |
| Ending Balance per Check Register | $ | - **(a) |

**\* Debit cards are used by:**     NONE

**\*\* If Closing Balance if negative, provide explanation:**

**The following disbursements were paid in Cash (do not includes items reported as Petty Cash on Attachment 4D:**
( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### TRANSFERS BETWEEN DEBTOR IN POSSESSION ACCOUNTS

"Total Amount of Outstanding Checks and other debits", listed above, includes:

| | | |
|---|---|---|
| $ | | Transferred to Payroll Account |
| $ | | Transferred to Tax Account |

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as  "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

# Exhibit D

# Wells Fargo Simple Business Checking

Account number: ████5899 ▪ August 19, 2013 - August 31, 2013 ▪ Page 1 of 3



BUDINGER WINDMILL LLC
DEBTOR IN POSSESSION
CH 11 CASE 13-09907 MFL
117 BROADWAY STE B
KISSIMMEE FL 34741-5713

## Questions?

Available by phone 24 hours a day, 7 days a week
**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

The Wells Fargo Business Insight Resource Center offers free access to business information and advice through videos, articles, podcasts and other resources. This site offers objective information from industry experts and best practices from real business owners. Topics include cash flow management, how to build and apply for credit, commercial real estate financing, marketing, and more. Visit the site at wellsfargobusinessinsights.com.

## Account options

A check mark in the box indicates you have these convenient services with your account.  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 8/19 | $0.00 |
| Deposits/Credits | 23,806.43 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 8/31** | **$23,806.43** |
| | |
| Average ledger balance this period | $11,576.95 |

Account number: 9829865899

**BUDINGER WINDMILL LLC**
**DEBTOR IN POSSESSION**
**CH 11 CASE 13-09907 MFL**

Florida account terms and conditions apply

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 063107513

For Wire Transfers use
Routing Number (RTN): 121000248

**Overdraft Protection**

This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

Sheet Seq = 0031651
Sheet 00001 of  00002

# Exhibit D

WELLS
FARGO

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|
| 8/19 | | Checking Opening Deposit | 7,908.11 | | 7,908.11 |
| 8/29 | | Deposit | 15,898.32 | | 23,806.43 |
| Ending balance on 8/31 | | | | | 23,806.43 |
| Totals | | | $23,806.43 | $0.00 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

## Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.

| Fee period 08/19/2013 - 08/31/2013 | | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|---|
| Your fee waiver is about to expire. You will need to meet the requirement(s) to avoid the monthly service fee. | | | |
| How to reduce the monthly service fee by $5.00 Have any ONE of the following account requirements | | Minimum required | This fee period |
| Average ledger balance | | $500.00 | $11,577.00 ☑ |
| Monthly service fee discount(s) *(applied when box is checked)* | | | |
| Online only statements (reduces monthly service fee by $5.00) | ☐ | | |

C1\C1

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Transactions | 5 | 50 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

# Exhibit D



## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your        $ _____
   register or transfers into          $ _____
   your account which are not          $ _____
   shown on your statement.          + $ _____
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | Total amount $ |  |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC  NMLSR ID 399801

**Exhibit D**

**Windmill - NEW**
**Reconciliation Detail**
**10000 · Wells Fargo - Checking, Period Ending 08/31/2013**

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 0.00 |
| **Cleared Transactions** | | | | | | |
| **Deposits and Credits - 2 items** | | | | | | |
| Deposit | 08/15/2013 | | Deposit | X | 7,908.11 | 7,908.11 |
| Deposit | 08/29/2013 | | | X | 15,898.32 | 23,806.43 |
| Total Deposits and Credits | | | | | 23,806.43 | 23,806.43 |
| Total Cleared Transactions | | | | | 23,806.43 | 23,806.43 |
| **Cleared Balance** | | | | | 23,806.43 | 23,806.43 |
| **Register Balance as of 08/31/2013** | | | | | 23,806.43 | 23,806.43 |
| **New Transactions** | | | | | | |
| **Checks and Payments - 3 items** | | | | | | |
| Check | 09/05/2013 | phone | Kissimmee Utility A... | | -960.72 | -960.72 |
| Check | 09/10/2013 | 1 | Wells Fargo | | -12,388.30 | -13,349.02 |
| Check | 09/10/2013 | 2 | Wells Fargo | | -12,388.30 | -25,737.32 |
| Total Checks and Payments | | | | | -25,737.32 | -25,737.32 |
| Total New Transactions | | | | | -25,737.32 | -25,737.32 |
| **Ending Balance** | | | | | -1,930.89 | -1,930.89 |

# Exhibit D

## ATTACHMENT 5A

## CHECK REGISTER - OPERATING ACCOUNT

Name of Debtor:     Budinger Windmill Trust            Case Number:    6:13-bk-09907-KSJ

Reporting Period beginning:        8/8/2013          Period ending:      8/31/2013

NAME OF BANK:            Wells Fargo              BRANCH:

ACCOUNT NUMBER:          xxx8215

PURPOSE OF ACCOUNT:    Prepetition Account (Closed) Funds Transferred to DIP Account xxxx5899

Account for all disbursements, including voids, lost checks, stop payments, etc. In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included.

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|--------------|-------|---------|--------|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL

**Exhibit D**

4:19 PM
09/23/13
Accrual Basis

# Windmill - NEW
## Account QuickReport
### As of August 31, 2013

| Date | Num | Name | Memo | Amount | Balance |
|------|-----|------|------|--------|---------|
| **10000 · Wells Fargo - Checking** | | | | | 0.00 |
| 08/15/2013 | | Deposit | Transfered funds from Windmill Point - Wells Fargo Acct to open DIP acct | 7,908.11 | 7,908.11 |
| 08/29/2013 | | Deposit | | 15,898.32 | 23,806.43 |
| **Total 10000 · Wells Fargo - Checking** | | | | 23,806.43 | 23,806.43 |
| **TOTAL** | | | | 23,806.43 | 23,806.43 |

# Exhibit D

<u>ATTACHMENT 4A</u>

<u>MONTHLY SUMMARY OF BANK ACTIVITY - OPERATING ACCOUNT</u>

Name of Debtor:   Budinger Windmill Trust      Case Number:   6:bk-13-09907-KSJ

Reporting Period beginning:   8/8/2013    Period ending   8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity. A standard bank reconciliation form can be found at http://www.usdoj.gov/ust/r21/reg_info.htm. If bank accounts other than the three required by the United States Trustee Program are necessary, permission must be obtained from the United States Trustee prior to opening the accounts. Additionally, use of less than the three required bank accounts must be approved by the United States Trustee.

BANK:   Wells Fargo                    BRANCH:

NAME:   Budinger Windmill           NUMBER: xxxx5899

PURPOSE OF ACCOUNT:           DIP Operating Account

| | | |
|---|---|---|
| Ending Balance per Bank Statement | $ | 23,806.43 |
| Plus Total Amount of Outstanding Deposits | $ | - |
| Minus Total Amount of Outstanding Checks and other debits | $ | - * |
| Minus Service Charge | $ | - |
| Ending Balance per Check Register | $ | 23,806.43 **(a) |

* Debit cards are used by:           NONE
** If Closing Balance if negative, provide explanation:

**The following disbursements were paid in Cash (do not includes items reported as Petty Cash on Attachment 4D:**
( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**TRANSFERS BETWEEN DEBTOR IN POSSESSION ACCOUNTS**
"Total Amount of Outstanding Checks and other debits", listed above, includes:
$ _____ Transferred to Payroll Account
$ _____ Transferred to Tax Account

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

**Exhibit D**

MOR-7

# Custom Business Checking®

Account number: ████ 8215  ■ August 1, 2013 - August 31, 2013  ■ Page 1 of 3



KATHY SHEIVE TRST AGENT FOR
WINDMILL POINT
117B BROADWAY
KISSIMMEE FL 34741-5713

## Questions?

Available by phone 24 hours a day, 7 days a week:
**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write:  Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR  97228-6995

## Your Business and Wells Fargo

The Wells Fargo Business Insight Resource Center offers free access to business information and advice through videos, articles, podcasts and other resources. This site offers objective information from industry experts and best practices from real business owners. Topics include cash flow management, how to build and apply for credit, commercial real estate financing, marketing, and more. Visit the site at wellsfargobusinessinsights.com.

## Account options

A check mark in the box indicates you have these convenient services with your account.  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 8/1 | $20,164.11 |
| Deposits/Credits | 7,754.00 |
| Withdrawals/Debits | - 27,918.11 |
| Closing balance on 8/19 | $0.00 |
| Average ledger balance this period | $33,350.83 |

Account number: ████ 8215
KATHY SHEIVE TRST AGENT FOR
WINDMILL POINT
Florida account terms and conditions apply

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 063107513

For Wire Transfers use
Routing Number (RTN): 121000248

**Overdraft Protection**

This account is not currently covered by Overdraft Protection.  If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

Sheet Seq = 0121683
Sheet 00001 of 00002

# Exhibit D

Account number: ███████ 8215   ■ August 1, 2013 - August 31, 2013   ■ Page 2 of 3



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 8/2 | | Deposit | 800.00 | | |
| 8/5 | | Deposit | 2,354.00 | | 20,964.11 |
| 8/5 | | Withdrawal Made In A Branch/Store | | | |
| 9/14 | | Deposit | 4,600.00 | 20,010.00 | 3,308.11 |
| 8/19 | | Withdrawal Made In A Branch/Store | | | 7,908.11 |
| Ending balance on 8/31 | | | | 7,908.11 | 0.00 |
| Totals | | | | | 0.00 |
| | | | $7,754.00 | $27,918.11 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

# Exhibit D

Account number: ████ 8215 ■ August 1, 2013 - August 31, 2013 ■ Page 3 of 3



---

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

---

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your        $ _____
   register or transfers into         $ _____
   your account which are not         $ _____
   shown on your statement.         + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2016 Wells Fargo Bank, N.A. All rights reserved. Member FDIC   NMLSR ID 399801

# Exhibit D

## Randy Sheive/Windmill Point
## Reconciliation Detail
### 1050 · SouthTrust Bank, Period Ending 08/31/2013

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| Beginning Balance | | | | | | 20,164.11 |
| Cleared Transactions | | | | | | |
| Checks and Payments - 3 items | | | | | | |
| Check | 08/06/2013 | | WHMH | X | -20,000.00 | -20,000.00 |
| Check | 08/06/2013 | | Bank Service Charge | X | -10.00 | -20,010.00 |
| Check | 08/19/2013 | | Budinger Windmill L... | X | -7,908.11 | -27,918.11 |
| Total Checks and Payments | | | | | -27,918.11 | -27,918.11 |
| Deposits and Credits - 3 items | | | | | | |
| Deposit | 07/30/2013 | | | X | 800.00 | 800.00 |
| Deposit | 08/05/2013 | | | X | 2,354.00 | 3,154.00 |
| Deposit | 08/15/2013 | | | X | 4,600.00 | 7,754.00 |
| Total Deposits and Credits | | | | | 7,754.00 | 7,754.00 |
| Total Cleared Transactions | | | | | -20,164.11 | -20,164.11 |
| Cleared Balance | | | | | -20,164.11 | 0.00 |
| Register Balance as of 08/31/2013 | | | | | -20,164.11 | 0.00 |
| Ending Balance | | | | | -20,164.11 | 0.00 |

# Exhibit D

## ATTACHMENT 5A

## CHECK REGISTER - OPERATING ACCOUNT

Name of Debtor:     Budinger Windmill Trust          Case Number:     6:13-bk-09907-KSJ

Reporting Period beginning:        8/8/2013        Period ending:        8/31/2013

NAME OF BANK:        Wells Fargo            BRANCH:

ACCOUNT NUMBER:        xxxx5899

PURPOSE OF ACCOUNT:                    DIP Operating Account

Account for all disbursements, including voids, lost checks, stop payments, etc. In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included.

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|--------------|-------|---------|--------|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL

**Exhibit D**

4:18 PM
09/23/13
Accrual Basis

# Randy Sheive/Windmill Point
## Account QuickReport
### As of August 31, 2013

| Type | Date | Num | Name | Memo | Amount | Balance |
|---|---|---|---|---|---|---|
| 1050 · SouthTrust Bank | | | | | | |
| Deposit | 08/15/2013 | | | Deposit | 4,600.00 | 3,308.11 |
| Check | 08/19/2013 | | Budinger Windmill LLC | To transfer funds to new DIP acct - Wells Fargo | -7,908.11 | 7,908.11 |
| | | | | | | 0.00 |
| Total 1050 · SouthTrust Bank | | | | | -3,308.11 | 0.00 |
| **TOTAL** | | | | | **-3,308.11** | **0.00** |

Page 1

# Exhibit D

### ATTACHMENT 4B

### MONTHLY SUMMARY OF BANK ACTIVITY - PAYROLL ACCOUNT

Name of Debtor:    Budinger Windmill Trust        Case Number:        6:bk-13-09907-KSJ

Reporting Period beginning:        8/8/2013        Period ending:        8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity. A standard bank reconciliation form can be found at http://www.usdoj.gov/ust/r21/reg_info.htm.

NAME OF BANK:        NONE        BRANCH:        n/a

ACCOUNT NAME:        NONE        ACCOUNT NUMBER:        n/a

PURPOSE OF ACCOUNT:        **The Debtor does NOT maintain a separate payroll account.**

| | |
|---|---|
| Ending Balance per Bank Statement | $    N/A |
| Plus Total Amount of Outstanding Deposits | $ |
| Minus Total Amount of Outstanding Checks and other debits | $                    * |
| Minus Service Charge | $ |
| Ending Balance per Check Register | $    N/A    **(a) |

**\* Debit cards must not be issued on this account.**

**\*\* If Closing Balance if negative, provide explanation:** _____

The following disbursements were paid in Cash:

( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

The following non-payroll disturments were made from this account:

| Date | Amount | Payee | Purpose | Reason for Disbursement from this account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

## Exhibit D

## ATTACHMENT 5B

## CHECK REGISTER - PAYROLL ACCOUNT

Name of Debtor:     Budinger Windmill Trust          Case Number:     6:bk-13-09907-KSJ

Reporting Period beginning:     8/8/2013          Period ending:     8/31/2013

NAME OF BANK:     NONE          BRANCH:     N/A

ACCOUNT NUMBER:     NONE

PURPOSE OF ACCOUNT:     **The Debtor does NOT maintain a separate payroll account.**

Account for all disbursements, including voids, lost checks, stop payments, etc.  In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included.

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|------|------|------|------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

TOTAL

## Exhibit D

## ATTACHMENT 4C

## MONTHLY SUMMARY OF BANK ACTIVITY - TAX ACCOUNT

Name of Debtor:     Budinger Windmill Trust          Case Number:          6:bk-13-09907-KSJ

Reporting Period beginning:          8/8/2013     Period ending          8/31/2013

Attach a copy of current month bank statement and bank reconciliation to this Summary of Bank Activity. A standard bank reconciliation form can be found on the United States Trustee website, http://www.usdoj.gov/ust/r21/index.htm.

NAME OF BANK: _____          BRANCH: _____

ACCOUNT NAME: _____          ACCOUNT NUMBER: _____

PURPOSE OF ACCOUNT:          **The Debtor does not maintain a separate tax account**

| | | |
|---|---|---|
| Ending Balance per Bank Statement | $ _____ | |
| Plus Total Amount of Outstanding Deposits | $ _____ | |
| Minus Total Amount of Outstanding Checks and other debits | $ _____ | * |
| Minus Service Charge | $ _____ | |
| Ending Balance per Check Register | $ _____ | **(a) |

**\* Debit cards must not be issued on this account.**

**\*\* If Closing Balance if negative, provide explanation:** _____

_____

The following disbursements were paid in Cash:
( ☐ Check here if cash disbursements were authorized by United States Trustee)

| Date | Amount | Payee | Purpose | Reason for Cash Disbursement |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

The following non-tax disturements were made from this account:

| Date | Amount | Payee | Purpose | Reason for Disbursement from |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

(a) The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

## Exhibit D

## ATTACHMENT 5C

## CHECK REGISTER - TAX ACCOUNT

Name of Debtor: _____    Case Number: _____

Reporting Period beginning: _____    Period ending: _____

NAME OF BANK: _____    BRANCH: _____

ACCOUNT NUMBER: _____

PURPOSE OF ACCOUNT: The Debtor does not maintain a separate tax account

Account for all disbursements, including voids, lost checks, stop payments, etc.  In the alternative, a computer generated check register can be attached to this report, provided all the information requested below is included. http://www.usdj.gov/ust/

| DATE | CHECK NUMBER | PAYEE | PURPOSE | AMOUNT |
|------|--------------|-------|---------|--------|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

TOTAL                                                          (d) _____

### SUMMARY OF TAXES PAID

Payroll Taxes Paid                              (a) _____
Sales & Use Tax Paid                            (b) _____
Oter Taxes Paid                                 (c) _____
TOTAL                                           (d) _____

(a) This number is reported in the "Current Month" column of Schedule of Receipts and Disbursements
    (Page MOR-2, Line 5O).
(b) This number is reported in the "Current Month" column of Schedule or Receipts and Disbursements
    (Page MOR-2, Line 5P).
(c) This number is reported in the "Current Month" column of Schedule of Receipts and Disbursements
    (Page MOR-2, Line 5Q).
(d) These two lines must be equal.

## Exhibit D

## ATTACHMENT 4D

## INVESTMENT ACCOUNTS AND PETTY CASH REPORT

### INVESTMENT ACCOUNTS

*The Debtor does not maintain any investment or petty cash accounts.*
Each savings and investment account, i.e. certificates of deposits, money market accounts, stocks and bonds, etc., should be listed separately.  Attach copies of account statements.

Type of Negotiable

| Instrument | Face Value | Purchase Price | Date of Purchase | Current Market Value |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| TOTAL | _____ | _____ | _____ | _____ (a) |

### PETTY CASH REPORT

The following Petty Cash Drawers/Accounts are maintained:

| Location of Box/Account | (Column 2) Maximun Amount of Cash in Drawer/Acct. | (Column 3) Amount of Petty Cash On Hand At End of Month | (Column 4) Difference between Column 2 & Column 3 |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| TOTAL | | $ _____ (b) | |

**For any Petty Cash Disbursements over $100 per transaction, attach copies of receipts. If there are no receipts, provide an explanation**

_____

_____

**TOTAL INVESTMENT ACCOUNTS AND PETTY CASH (a + b)  $ _____ (c)**
(c)The total of this line on Attachment 4A, 4B and 4C plus the total of 4D must equal the amount reported as "Ending Balance" on Schedule of Receipts and Disbursements (Page MOR-2, Line 7).

## Exhibit D

## ATTACHMENT 6

## MONTHLY TAX REPORT

Name of Debtor: _____Budinger Windmill Trust_____ Case Number: _____6:bk-13-09907-KSJ_____

Reporting Period beginning: _____8/8/2013_____ Period ending: _____8/31/2013_____

## TAXES OWED AND DUE

Report all unpaid post-petition taxes including Federal and State withholding FICA, State sales tax, property tax, unemployment tax, State workmen's compensation, etc.

| Name of Taxing Authority | Date of Payment | Description | Amount | Date Last Tax Return Filed | Tax Return Period |
|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ | _____ |

TOTAL                                    $ _____

**Exhibit D**

## ATTACHMENT 7

### SUMMARY OF OFFICER OR OWNER COMPENSATION

#### SUMMARY OF PERSONNEL AND INSURANCE COVERAGES

Name of Debtor: ___Budinger Windmill Trust___    Case Number: ___6:bk-13-09907-KSJ___

Reporting Period beginning: ___8/8/2013___    Period ending ___8/31/2013___

Report all forms of compensation received by or paid on behalf of the Officer or Owner during the month.  Include car allowances, payments to retirement plans, loan repayments, payments of Officer/Owner's personal expenses, insurance premium payments, etc.  Do not include reimbursement for business expenses Officer or Owner incurred and for which detailed receipts are maintained in the accounting records.

| Name of Officer or Owner | Title | Payment Description | Amount Paid |
|---|---|---|---|
| No comempensation has been paid postpetition | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### PERSONNEL REPORT

| | Full Time | Part Time |
|---|---|---|
| Number of employees at beginning of period | 0 | 0 |
| Number hired during the period | 0 | 0 |
| Number terminated or resigned during period | 0 | 0 |
| Number of employees on payroll at end of period | 0 | 0 |

### CONFIRMATION OF INSURANCE

List all policies of insurance in effect, including but not limited to workers' compensation, liability, fire, theft, comprehensive, vehicle, health and life.  For the first report, attach a copy of the declaration sheet for each type of insurance. For subsequent reports, attach a certificate of insurance for any policy in which a change occurs during the month (new carrier, increased policy limits, renewal, etc.).

| Agent and/or Carrier | Phone Number | Policy Number | Coverage Type | Expiration Date | Date Premium Due |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The following lapse in insurance coverage occurred this month:

| Policy Type | Date Lapsed | Date Reinstated | Reason for Lapse |
|---|---|---|---|
| | | | |
| | | | |

Check here if U. S. Trustee has been listed as Certificate Holder for all insurance policies.

## Exhibit D

**ATTACHMENT 8**

**SIGNIFICANT DEVELOPMENTS DURING REPORTING PERIOD**

Information to be provided on this page, includes, but is not limited to: (1) financial transactions that are not reported on this report, such as the sale of real estate *(attach closing statement)* ; (2) non-financial transactions, such as the substitution of assets or collateral; (3) modifications to loan agreements; (4) change in senior management, etc.   Attach any relevant documents.

| Darte | Docket Number | Document |
|-------|--------------|----------|
| 8/15/2013 | 11 | BNC Certificate of Mailing. (related document(s) (Related Doc # 8)). Notice Date 08/15/2013. (Admin.) (Entered: 08/16/2013) |
| 8/20/2013 | 13 | Motion *to Determine Adequate Assurance for Payment of Utility Services, or, in the Alternative, Establishing the Procedure for Determining Adequate Assurance* Filed by Kenneth D Herron Jr on behalf of Debtor Budinger Windmill Trust (Herron, Kenneth) (Entered: 08/20/2013) |
| 8/20/2013 | 14 | Motion to Use Cash Collateral , *Expedited Hearing Requested* Filed by Kenneth D Herron Jr on behalf of Debtor Budinger Windmill Trust (Herron, Kenneth) Modified on 8/21/2013 (Melanie). (Entered: 08/20/2013) |

We anticipate filing a Plan of Reorganization and Disclosure Statement on or before **October 31, 2013.**

**Exhibit D**

# Plan Proponent's Estimated Liquidation Value of Assets

|  | Assets | | Estimated Liquidation Value |
|---|---|---|---|
| a. | Cash on hand | $ | 82,815.90 |
| b. | Rents receivable | $ | - |
| c. | Building & Land | | |
|  | Properties Subject to PNC Mortgages (gross value is $1,315,000. Debtor estimates liquidation value at 80% of gross value) | $ | 1,052,000.00 |
|  | Properties Subject to Wells Fargo mortgage (gross value is $2,110,000.  Debtor estimates liquidation value at 80% of gross value) | $ | 1,688,000.00 |
|  | **TOTAL ASSET VALUE** | $ | 2,822,815.90 |

| | | |
|---|---|---|
| *Less:* | | |
| Chapter 7 adminisrative expenses (estimated at 5% of total asset value) | $ | 141,140.80 |
| *Less:* | | |
| Secured creditors' recoveries | $ | 2,681,675.11 |
| *Less:* | | |
| Chapter 11 administrative expenses | $ | - |
| *Less:* | | |
| Priority claims, excluding administrative expense claims | $ | - |
| (1)  Balance for unsecured claims | $ | - |
| (2)  ESTIMATED  Total dollar amount of unsecured claims | $ | 1,341,263.47 |
| Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation: | | 0% |
| (3) Total dollar amount to be distributed ot unsecured claims undet the Plan | $ | 5,000.00 |
| Percentage of Claims Which Unsecured Creditors Will Receive Under the Plan: | | 0.3728% |

**EXHIBIT E**

# Cash on Hand on the Effective Date of the Plan

Cash on hand on effective date of the Plan (estimated):                              $ 115,000.00

Less -

      Amount of administrative expenses payable on effective date of the Plan   $   25,000.00

      Amount of statutory costs and charges                                 $    1,650.00

      Amount of cure payments for executory contracts                       $        -

      Other Plan Payments due on effective date of the Plan                 $    5,000.00

      Balance after paying these amounts                                    $   83,350.00

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

      Cash in Debtor's bank account now                                     $   82,815.00

      Additional cash Debtor will accumulate from net earnings between now
      and effective date of the Plan                                        $   12,185.00

      Borrowing [separately state terms of repayment]                       $        -

      Capital Contributions                                                 $   10,000.00

      Other                                                                 $   10,000.00

      Total [This number should match "cash on hand" figure noted above     $ 115,000.00

# EXHIBIT F

# Budinger Windmill Trust

Projected Income and Expenses
Life of Plan
February, 2014 to January 2019

|  | | Monthly Commencing Feb. 2014 | Annual |
|---|---|---|---|
| INCOME (projected) | | 42,000.62 | 504,007.44 |
| | | | |
| OPERATING EXPENSES | | | |
| Cleaning and Lawn Maintenance | | 685.00 | 8,220.00 |
| Building Maintenance | | 800.00 | 9,600.00 |
| Commissions | | 800.00 | 9,600.00 |
| Insurance | | 1,540.08 | 18,481.00 |
| Legal and other Professional fees | | 700.00 | 8,400.00 |
| Building Management Fee | | 1,235.00 | 14,820.00 |
| Administrative Management Fees | | 1,650.00 | 19,800.00 |
| Taxes - Real Estate Taxes | | 4,261.31 | 51,135.72 |
| Taxes - Sales Taxes | | 2,921.00 | 35,052.00 |
| Utilities | | 400.00 | 4,800.00 |
| Waste Service | | 244.00 | 2,928.00 |
| Security Deposit | | 520.00 | 6,240.00 |
| TOTAL OPERATING EXPENSES | | 15,756.39 | 189,076.72 |
| | | | |
| Net Income Per month | | 26,244.23 | 314,930.72 |
| Cash on hand on Effective Date | 115,000.00 | | |

| Payments under the Plan | On Effective Date | Monthly Beginning March 1, 2014 | Annual through Life of Plan |
|---|---|---|---|
| *Beginning Cash* | 115,000.00 | 85,000.00 | 89,188.02 |
| *Plus Monthly (or Annual)* | | 26,244.23 | *314,930.72* |
| LESS: Administrative Claims | 25,000.00 | - | |
| Class 1 | - | 2,931.22 | 35,174.64 |
| Class 2 | - | 4,582.14 | 54,985.68 |
| Class 3 | - | 1,347.69 | 16,172.28 |
| Class 4 | - | 12,129.19 | 145,550.28 |
| Class 5 | - | 85.40 | 1,024.80 |
| Class 6 | - | 93.51 | 1,122.12 |
| Class 7 | - | 243.83 | 2,925.96 |
| Class 8 | - | 79.69 | 956.28 |
| Class 9 | - | 563.54 | 6,762.48 |
| Class 10 | 5,000.00 | - | - |
| *Ending Cash* | 85,000.00 | 89,188.02 | 139,444.22 |

**EXHIBIT G**